632 A.2d 1081

**Dominica DIAZ, Appellant,**

v.

**Thomas HOUCK, William Mentesana, Donald Erdman, Kenneth Zeller, and City of Allentown.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided Oct. 22, 1993.

276

278

Robert Pandaleon, for appellant.

Donald E. Wieand, Jr., for appellees.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

In the case before us we are asked to review the trial court's grant of summary judgment in the nature of a demurrer in favor of Thomas Houck, William Mentesana, Donald Erdman, Kenneth Zeller and the City of Allentown (collectively, Appellees).

Summary judgment can be sustained only if the pleadings, depositions, interrogatories, and other discovery materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. For the purpose of testing the legal sufficiency of the complaint, a motion for summary judgment in the nature of a demurrer admits as true all well-pleaded material, relevant facts. If the facts state a claim for which relief may be granted under any theory of law, then a demur-

rer must be denied. *Mazzagatti v. Everingham by Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). It is under the above standard of review that we analyze the facts of this case.

In the early morning hours of February 24, 1988, Dominica Diaz (Appellant) was standing on the corner of Fifth and Allen Streets in the City of Allentown. She stated that earlier in the evening she had been at the house of a man known as Fernando, with whom she had had an altercation. She stated that he had unknowingly drugged her drinks, which she had consumed at his house, and because of this she could not stand for a prolonged period of time and was incoherent and despondent. She had earlier attempted to telephone the Allentown Police Department to summon aid, but upon seeing a police car driven by Officer Houck, she hailed it.

Officer Houck stopped his vehicle, and Appellant advised him that there was a man after her to kill her, and she pointed down the street to the man's house. Officer Houck then left her to check on the situation, saying that he would be right back. When he returned, he found her unconscious, lying in the street. The very next thing Appellant remembers is waking up in a jail cell.

When she awoke seven hours later in the Allentown jail, on the morning of February 24, she noticed bars and was confused regarding her presence there. She called for the police, who responded that she had been "all drugged up and drunk." There were some bruises on her back and elbow, and she saw a dried puddle of blood on the floor next to her. The officer said she had been bleeding from the mouth. When Appellant was released, she was experiencing severe headaches, and upon arriving home, she immediately fell asleep, sleeping until the next morning.

When she awakened the next morning, February 25, she was nauseated and vomiting. Her boyfriend took her to the emergency room at the Allentown hospital. She was diagnosed as having a fractured skull and blood clots, and was required to undergo extensive head surgery. She does not remember when or where she fractured her skull.

Appellant's allegations in her complaint may be divided into three basic issues. They include: 1) Appellees were negligent in placing her in a bare, concrete jail cell which contained neither bed nor chair and whose bars created an unreasonable risk of harm and which was unsafe for disoriented and incoherent detainees, including Appellant, who have a known propensity to lose consciousness, and in failing to alleviate such harm thereby causing her to fall and fracture her skull; 2) Appellees, with intentional, willful, wanton, knowing and reckless disregard of her rights and her safety, threw and detained Appellant in an unreasonably unsafe place despite actual or constructive notice and knowledge that she had a known propensity to lose consciousness and then failing to help Appellant when she was found unconscious lying on the cell's concrete floor and bleeding from the mouth; and 3) Appellees deprived Appellant of her due process rights to be free from excessive force, her right to be free from an illegal arrest, and her right to bodily security.

## I. Negligence Claims

Appellant claims that Appellees' negligent conduct of detaining her in an unreasonably unsafe jail cell caused her to hit her head and suffer a skull fracture. She argues that the existence of blood inside the jail cell constitutes circumstantial evidence that the fall that caused the skull fracture occurred inside the cell, and she invokes the doctrine of *res ipsa loquitur* to support her conclusion that she is entitled to this inference of Appellees' negligence.

Our Supreme Court has held that it is the function of the court to determine whether an inference of negligence may be reasonably drawn by the jury. *Gilbert v. Korvett's,* 457 Pa. 602, 327 A.2d 94 (1974). Citing and adopting the rule in Section 328(d) of the Restatement (Second) of Torts (1965), the *Gilbert* court held that negligence may be inferred, under the doctrine of *res ipsa loquitur,* when: (1) the event is of a kind which ordinarily does not occur in the absence of negligence; (2) other, responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by

the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to plaintiff.

■ We hold that the circumstantial evidence of the blood in the jail cell is insufficient to support the inference of negligence because Appellant can not meet the second arm of the *Gilbert* test, the reasonable elimination of other causes of Appellant's injury. Because Appellant does not remember when or where she suffered the injuries resulting in the skull fracture and cannot offer any evidence tending to prove that this injury was sustained during her detention in an allegedly unsafe jail cell, and also because the evidence of bleeding is insufficient to indicate that her skull fracture occurred in the jail cell, it is not reasonable to eliminate other incidents, such as Appellant's fall on the street prior to her arrest, as the cause of her head injury.

■ It is elementary that the liability of a defendant for injury to another is predicated upon a connection between the defendant's acts or omissions and the injuries sustained. *Whitner v. Von Hintz,* 437 Pa. 448, 263 A.2d 889 (1970). Because this connection between Appellee's alleged acts or omissions and the Appellant's skull fracture cannot be reasonably inferred from the circumstantial evidence proffered, and because the doctrine of *res ipsa loquitur* is not available in the present circumstances, we affirm the trial court's grant of summary judgment on this issue.

■ Appellant also claims that Appellees were negligent in detaining her in a jail cell with no chairs or anywhere to sit, and with protruding bars resulting in injuries when she fell and bled from the mouth. This claim implicates the issue of governmental immunity to negligence claims and the exceptions to governmental immunity under what is commonly called the Political Subdivision Tort Claims Act (Act).[1]

Appellant argues that the Real Property exception to the Act, 42 Pa.C.S. § 8542(b)(3), is applicable in the present

1. Sections 8541–8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

circumstances, because it was the condition of the realty which caused her to fall and bleed from the mouth.

Our Supreme Court has held that the Real Property exception is to be narrowly construed to give effect to the legislative intent to insulate political subdivisions from tort liability. For this reason the Court held that liability will attach only when the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by acts of others. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).[2] Because the bare, concrete jail cell did not itself proximately cause Appellant to fall and injure herself, the Real Property exception is inapplicable and summary judgment dismissing Appellant's claim for recovery on this basis was proper.

## II. *Willful Misconduct*

Next we must consider whether, when accepting as true the well-pleaded facts of the non-moving party, *Id.*, summary judgment was proper on the issue of whether the Appellees intentionally and willfully threw[3] and detained Appellant in an unreasonably unsafe place despite notice of her propensity to lose consciousness, thereby causing her injuries. Although inartfully expressed, the misconduct alleged here, is the failure to adequately monitor Appellant, despite her known propensity to lose consciousness, and the failure to

**2.** As examples of this narrow construction, our courts have held that a city's failure to repair a defective fence through which children crossed and were subsequently injured by trains on neighboring property, did not fall within the Real Property exception to governmental immunity to negligence liability, *Gardner v. Consolidated Rail Corp. SEPTA*, 524 Pa. 445, 573 A.2d 1016 (1990), and an arrestee's suicide in a jail cell was not caused by the condition of the jail cell, although it may have made it easier for them to hang themselves, and, therefore, defendants were not negligent in the care, control or custody of the real estate as required to defeat governmental immunity under the Real Property exception. *Estates of Harding v. Cooper*, 117 Pa.Commonwealth Ct. 371, 544 A.2d 1060 (1988).

**3.** As stated above, because Appellant has no memory of the events, and there was no evidence adduced from any other source tending to prove that she was so "thrown" into the cell, summary judgment on her claim that Appellees willfully threw her into the jail cell was proper.

provide medical help when it was discovered that she was bleeding from the mouth and had a pool of blood next to her.

Appellees claim that they are protected from liability by governmental and official immunity.[4] Section 8541 of the Judicial Code (Code), 42 Pa.C.S. § 8541, grants the city governmental immunity from liability from any damages on account of an injury to a person or property caused by an act of the city, its employee or any other person. Additionally, Section 8545 of the Code, 42 Pa.C.S. § 8545, grants the same immunity to employees of the city if an injury to a person or property is caused by an employee acting within the scope of his office or duties. However, Section 8550 of the Code, 42 Pa.C.S. § 8550, provides that, "immunity shall not protect employees against acts that are judicially determined to be a crime, actual fraud, actual malice or willful misconduct." *Williams v. City of Philadelphia*, 131 Pa.Commonwealth Ct. 71, 569 A.2d 419, 421 (1990). Therefore, in order to place Appellees outside the protection of official and governmental immunity, Appellee's acts of failing to monitor Appellant and failing to provide medical assistance must be deemed willful misconduct. *Simmons v. Township of Moon*, 144 Pa.Commonwealth Ct. 198, 601 A.2d 425 (1991).

In *Williams*, Emergency Medical Technicians (EMTs) came to the aid of a victim who had fallen unconscious on the stairway of his home. They moved the victim and waved household ammonia under his nose but could not revive him, concluding that the victim was intoxicated and would sleep it off. Four or five hours later, the Williams family notified the fire department that the decedent was still unconscious. The EMTs returned and took the victim to the hospital where he died from a head injury sustained at the time of his fall.

The *Williams* court, citing *Evans v. Philadelphia Transportation Co.*, 418 Pa. 567, 212 A.2d 440 (1965), held that in order to prove willful misconduct, it must be shown that the actor

---

4. Subchapter C of Chapter 85 of the Judicial Code, 42 Pa.C.S. § 8541 through § 8564.

desired to bring about the result that followed, or at least it was substantially certain to follow. Because the estate of the decedent could not allege that the EMTs had the intent or awareness that Mr. Williams would die from the fall (specific intent), this court held that the EMTs' conduct, although showing a reckless disregard of the existing danger, did not constitute willful misconduct.[5]

Similarly, here, Appellant has alleged that Appellees' failure to monitor her in the jail cell, knowing that she had a propensity to fall unconscious, and their failure to provide medical aid was willful misconduct. Lacking any evidence of any assaultive behavior by the officers, such as pushing Appellant or throwing her into a jail cell, there are no facts to suggest that Appellees' specifically intended to injure Appellant by their conduct, nor were her injuries substantially certain to follow from their treatment of her. Although Appellees may have acted in deliberate disregard of her safety, "wanton conduct", *see Evans,* their conduct does not evince the requisite specific intent required under our case law. Therefore, this conduct does not rise to the level of willful misconduct and does not defeat Appellees' governmental or official immunity.

### III. Section 1983 Claims

Finally, Appellant claims that the trial court erred in granting Appellees' motion for summary judgment on her claim under Section 1983 of the United States Code, 42 U.S.C. § 1983, that she was intentionally, knowingly and with reckless disregard for her rights and safety, deprived of her

---

5. Similarly, in *Simmons,* this court held that county detectives were immune from liability under the Political Subdivision Tort Claims Act for causing the arrestee's suicide. It was alleged that the detectives had no probable cause to detain decedent, but did so for the specific reason of coercing and inducing him to give an inculpatory statement, knowing that he was emotionally distraught. Because Simmons failed to allege that the detectives, by their conduct, intended the decedent would commit suicide, nor that it was substantially certain to follow, we held that they were immune from liability.

substantive right to due process of law.[6]

Section 1983 states in relevant part:

Every person who, under color of any statute ordinance, regulation, custom or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

 In determining whether a Section 1983 action has been stated, the initial inquiry must focus on whether a plaintiff has alleged that the defendant deprived him or her of a federally guaranteed right or interest while acting under the color of state law. *Heinly.*[7]

We have held that:

When individuals are placed in custody by the government, or under the care of government, they have a liberty interest protected by the due process clause of the four-teenth amendment in safe conditions of confinement. *Youngberg v. Romeo,* 457 U.S. 307 [102 S.Ct. 2452, 73 L.Ed.2d 28] (1982). This interest arises out of a 'special relationship' between the government and the individual created by virtue of the constraints imposed on private action by placing individuals into custody. *See Walker v.*

**6.** Although Appellant has not specifically pled a violation of Section 1983, this Court has stated that, "Pennsylvania is a 'fact pleading' jurisdiction under which courts are presumed to know the law, and plaintiffs need only plead facts constituting the cause of action, and the courts will take judicial notice of the statute involved." *Heinly v. Commonwealth,* 153 Pa.Commonwealth Ct. 599, 621 A.2d 1212, 1215 n. 5 (1993). Accordingly, Appellant need only allege the material facts which form the basis of the cause of action, and is not required to specify the legal theory or theories underlying the Complaint. *Id.*

**7.** Local government employees may be directly liable, under Section 1983, as may the government body itself, if employees or agents are executing the government's policy or custom when they inflict the injury to individual rights. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*Rowe*, 791 F.2d 507, 511 (7th Cir.), *cert denied*, 479 U.S. 994 [107 S.Ct. 597, 93 L.Ed.2d 597] (1986).

*Harding*, 117 Pa.Commonwealth Ct. at 382, 544 A.2d at 1065–66.

In *Colburn v. Upper Darby Township*, 838 F.2d 663 (3d Cir.1988), the Third Circuit held that a detainee is entitled under the Due Process Clause of the Fourteenth Amendment to protection of his or her personal security and safety and to reasonable medical care. It is well settled that there is no requirement under Section 1983 to show a specific intent to deprive a person of his or her federal rights, *Heinly*, and injury to an individual's liberty interest in safe confinement by *negligent* conduct does not implicate the due process protections of the Fourteenth Amendment, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). However, for the purposes of Section 1983, the Fourteenth Amendment does impose a duty on custodial officials not to act with *deliberate indifference* to an individual's serious medical needs and personal security. *Colburn*.

In construing *Colburn*, this Court has held that in order to show reckless or deliberate indifference to an arrestee's right to safe confinement, it must be shown that the custodial officers knew or had reason to know that the arrestee has a particular need or vulnerability. *Harding*. Thus, the *Harding* court held that summary judgment in the nature of a demurrer in favor of the arresting officers was proper because plaintiff's decedent had failed to make any factual allegations which would establish that the officers knew or should have known of the arrestee's suicidal tendencies. We held that the arresting officers were merely negligent and a cause of action under Section 1983 had not been stated.[8]

In this case, the Appellant claims that her substantive due process rights to be free from illegal arrest, excessive

---

8. Similarly, in *Simmons*, a plaintiff's decedent was unable to recover under Section 1983 because she failed to allege that the county detectives acted with deliberate indifference to decedent's psychological needs or knew or should have known that decedent had suicidal tendencies.

force, and right to "bodily security" were violated.[9] The trial court held that Appellant's claim that she was deprived of her right to "bodily security" by the actions of the individual police officers who acted pursuant to the customs, regulations or practice of the Allentown Police Department, was not actionable because the court was not aware of any Constitutional right to "bodily security".[10] Although Appellant inartfully characterizes the right involved, the facts pled constitute a claim that Appellant's liberty interest in safe confinement was denied. This interest includes adequate medical attention for a detainee's serious medical needs, *Colburn*, and adequate supervision and monitoring of its jail cells. *Harding.*

■ In a Section 1983 action, a pre-trial detainee is entitled, under the Due Process Clause of the Fourteenth Amendment, to no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment, and no less a level of medical care than that required for convicted prisoners by the Eighth Amendment. *Colburn.* In cases concerning convicted prisoners it has been held that those acting under color of state law have a duty not to act

9. In her complaint Appellant argued that her due process right to be free from cruel and unusual punishment had been denied. On appeal, she has not raised this issue but instead claims that her right to be free from illegal arrest was denied. Having failed to raise this issue at the trial court level, we hold that this issue has been waived. *Hines v. Southeastern Pennsylvania Transportation Authority*, 147 Pa.Commonwealth Ct. 189, 607 A.2d 301 (1992). Appellant also alleged that her substantive due process right to be free from excessive force had been violated. However, this claim must fail in view of the fact that Appellant has not established by any evidence, and because of her memory loss, cannot by her own testimony establish, that she was thrown in to the jail cell or that excessive force was used against her during the arrest. Therefore, no issue of material fact exists and summary judgment was proper on these two claims under Section 1983.

10. The trial court, in finding no violation of Appellant's constitutional rights, cites *Morris v. Musser*, 84 Pa.Commonwealth Ct. 170, 478 A.2d 937 (1984). This case involved an assault upon a member of the public to which the police did not timely respond. The *Morris* court held that adequate police protection is not a federal constitutional right. This is to be distinguished from the case before us which concerns the constitutional rights of an individual who had been arrested and detained by the police.

with deliberate indifference to a prisoner's safety and serious medical needs. *Wareham v. Jeffes,* 129 Pa.Commonwealth Ct. 124, 564 A.2d 1314 (1989); *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). If Appellees knew or should have known that Appellant was vulnerable to losing consciousness but failed to monitor her in the jail, and if they knew or should have known that Appellant had a serious medical need such that a "lay person would easily recognize the necessity for a doctor's care" *Wareham,* 129 Pa.Commonwealth Ct. at 141, 564 A.2d at 1323, then a Due Process violation has occurred.

A motion for summary judgment in the nature of a demurrer admits as true all well-pleaded, material, relevant facts. *Mazzagatti.* If the facts, as found in the discovery materials, supporting affidavits, as well as in the non-moving party's pleadings, state a cause of action under any theory of law, then summary judgment must be denied. *Id.*

Under this standard, we hold that the trial court erred in granting Appellees motion for summary judgment because Appellant has alleged facts sufficient to state a cause of action under Section 1983. We hold that there was credible evidence that Appellees[11] knew that Appellant was vulnerable to falling unconscious, because just prior to her arrest she was found lying unconscious on the street. The testimony shows that Appellees knew this but did not monitor or supervise Appellant in her jail cell, with the result that she was again found lying in the cell, having bled from the mouth on to the floor of the cell.

Appellant has also alleged facts which if true would prove that Appellees deliberately disregarded her need for medical attention. Officer Houck testified that he saw that she had fallen for a second time and was bleeding from the mouth. Appellant testified that she was bruised and that she was disoriented when she found herself in a jail cell, and that she

11. Because Appellees' motion for summary judgment claimed, and the trial court held, that Appellant had failed to state any actionable claims it did not distinguish among the individual Appellees as to their potential liability under Section 1983.

told Officer Houck that she was suffering from a severe headache. Appellees' failure to provide medical attention under these circumstances is sufficient to make out a claim for a deprivation of Due Process rights.

Because a jury might reasonably find that Appellees, while acting under the color of state law, deprived Appellant of her federally guaranteed right or interest in safe confinement under Section 1983, we reverse the trial court's grant of Appellees' motion for summary judgment on this issue.

Accordingly, we affirm in part and reverse in part the trial court's order granting summary judgment in favor of Appellees.

## *ORDER*

AND NOW, this 22nd day of October 1993, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is hereby affirmed in part and reversed in part relating to the Section 1983 claims, consistent with the foregoing opinion.