**Joseph SCHNUPP, Appellant,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY, a Municipal Subdivision, William J. Sullivan, and Richard Schwartz, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 1997.

Decided April 2, 1998.

Charles E. McKissock, Pittsburgh, for appellant.

Albert G. Feczko, Pittsburgh, for appellees.

Before COLINS, President Judge, and McGINLEY, J., and RODGERS, Senior Judge.

COLINS, President Judge.

Joseph Schnupp (Schnupp) appeals from the August 30, 1996 order of the Court of Common Pleas of Allegheny County (trial court) granting a motion for summary judgment filed by the Port Authority of Allegheny County (PAAC), William Sullivan, and Richard Schwartz (collectively Appellees), defendants in a civil rights action brought against them by Schnupp.

This matter arose as a result of an incident that occurred on September 6, 1993 at PAAC's Wood Street subway station, where Schnupp, along with two children from his family, twelve-year-old Melissa and ten-year-old Kenneth, were waiting for a trolley home to the South Hills section of the City. A PAAC trolley pulled into the station, and Schnupp, along with about thirty other individuals who thought the vehicle was bound for South Hills, boarded it. The trolley operator ordered everyone off and announced that the vehicle was a shuttle trolley not headed for South Hills. The record indicates that as Schnupp stepped off the trolley, he questioned the operator about the lateness of the South Hills trolley, whereupon the operator unleashed abusive language at Schnupp and the other South Hills passengers. At this point, as alleged in the record, the trolley operator left his vehicle, walked onto the station platform, pushed through several people, and began using threatening language directly in Schnupp's face.

The record further alleges that Appellees Sullivan and Schwartz, acting within the scope of their employment with PAAC, appeared on the scene, placed the trolley operator back on the trolley, and directed him to leave. Thereafter, Appellee Sullivan moved through the crowd and tried to obtain information about what had happened. Arriving in the station at this point was a South Hills trolley, which Schnupp, his children, and others attempted to board. Appellees Sullivan and Schwartz stopped Schnupp and asked for his name and for information about the incident, but Schnupp continued to board the trolley. Appellees Sullivan and Schwartz stopped Schnupp a second time and warned him he would be arrested if he didn't tell them what had happened. Schnupp ignored the Appellees and was immediately arrested, whereupon he directed his two young children to board the South Hills trolley for home.

Thereafter, according to the record, Appellees took Schnupp (who still refused to provide information) to a small room in PAAC's Wood Street facility, where they were so enraged by Schnupp's continued silence that they threw him across the room and against the wall. Appellees then took Schnupp in handcuffs to the city jail where he was fingerprinted, interrogated, jailed, and served with a criminal complaint charging him with resisting arrest and disorderly conduct for

which he had a preliminary arraignment hearing.

Appellees Sullivan and Schwartz were directed to take Schnupp to a hospital where he was examined for his injuries, treated, and released. Thereafter, at a hearing before a city magistrate, the resisting arrest charge against Schnupp was dismissed, and Schnupp was charged $25.00 plus costs for the disorderly conduct charge. Schnupp appealed this latter charge and after a hearing held on February 3, 1994, the court sustained the appeal and found Schnupp not guilty. PAAC did not appeal the court's decision.

On August 2, 1994, Schnupp filed a complaint against Appellees PAAC, Sullivan, and Schwartz, alleging intentional infliction of emotional distress, misuse and abuse of process, assault and battery, false arrest, false imprisonment, libel, and slander. Appellees filed a motion for summary judgment, which the trial court, by order dated August 30, 1996, granted; and at the same time the court dismissed Schnupp's complaint with prejudice. This appeal followed.

■ Our scope of review of an appeal from the grant of summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Rankin `v. Southeastern Pennsylvania Transportation Authority*, 146 Pa.Cmwlth. 429, 606 A.2d 536 (1992).

Schnupp contends the trial court abused its discretion and erred in granting Appellees' motion for summary judgment considering that he alleged a detailed course of conduct by Appellees acting under color of law which, on its face, clearly establishes that Appellees violated Schnupp's federal and state civil rights. Specifically, both the complaint and affidavit alleged that Appellees, in violation of Schnupp's civil rights, wrongfully stopped, interrogated, arrested, assaulted, injured, and unconstitutionally detained him, and thereafter wrongfully brought criminal charges against him which ultimately were dismissed. Finally, Schnupp contends that the trial court erred in granting Appellees' summary judgment motion on the basis that sovereign immunity[1] shielded Appellees Sullivan and Schwartz from liability.

■ The present matter must be reviewed within the parameters of Pennsylvania Rule of Civil Procedure 1035.2,[2] which provides that any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of material fact that could be established by additional discovery or expert report, or, (2) whenever there is insufficient evidence to permit a jury to find a fact essential to the cause of action or defense. In *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994), this Court observed that the grant of a motion for summary judgment is warranted only "in a clear case, that the moving party bears the burden of establishing that no material issue of fact remains and that the record must be viewed in the light most favorable to the nonmoving party." *Id.* 632 A.2d at 1004. In the present case, the trial court's opinion indicates that Appellees did not contest Schnupp's factual account of what transpired, at least insofar as admitting to a "run-in or clash between the parties at the subway station" and that they, "in their official capacity,

---

1. The trial court's opinion states that pursuant to Article I, Section II of the Constitution of Pennsylvania, sovereign immunity is extended to the "Commonwealth, its officials and employees acting within the scope of their duties.... The Political Subdivision Tort Claims Act [Tort Claims Act], 42 Pa.C.S.A. Section 8501, (1982), defines a local agency as 'a government unit other than the Commonwealth government.'.... The Port Authority of Allegheny County is a local agency and enjoys governmental immunity under the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. Section 8522. *Marshall v. Port Authority*, 524 Pa. 1, 4, 568 A.2d 931, 933 (1990)." The opinion then lists nine exceptions to sovereign immunity set forth in Section 8522 of the Tort

Claims Act, none of which, avers the trial court, applies to Schnupp's situation. By way of correction, we note that *Marshall* properly refers to the Port Authority of Allegheny County as a Commonwealth, rather than a local agency. What is commonly known as the Sovereign Immunity Act is found at 42 Pa.C.S. §§ 8521–8528. Exceptions to sovereign immunity are set forth in Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b).

2. Effective July 1, 1996, new Rules of Civil Procedure 1035.1 through 1035.5 governing summary judgment replace former Rule 1035.

arrested" Schnupp, as a result of which he sustained injuries. It strains credulity, however, to assume that Appellees admitted to having performed the specific, unreasonably violent acts which Schnupp alleges occurred, such as throwing him across a room so as to hit a wall. In any event, there is a substantial likelihood that through additional discovery, material facts could be elicited that would be relevant to establishing or disproving whether Appellees' specific conduct and degree of force toward Schnupp would give rise to a cause of action against them under Section 1983, 42 U.S.C. § 1983 [3]. Therefore, the trial court erred in granting Appellees' summary judgment motion.

More significantly, given the present fact scenario, the trial court's reliance upon sovereign immunity is misplaced. In *Heinly v. Commonwealth of Pennsylvania*, 153 Pa. Cmwlth. 599, 621 A.2d 1212, 1215–16 (1993), state police officers, while acting in the course and scope of their employment in arresting Heinly and his brother, were charged with violating Heinly's constitutional rights by "intentionally, willfully, knowingly and recklessly" firing gunshots into the house when they knew Heinly was inside attempting to talk his brother into surrendering. Although the officers conceded they had no immunity from personal liability under Section 1983 because of the United States Supreme Court's decision in *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991),[4] they still asserted that any such 1983 action was barred by the Sovereign Immunity Act. This Court found otherwise and stated:

> [A] state may not lessen the availability of Section 1983 by taking any action purport-

edly frustrating its application. In *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332, ... the United States Supreme Court disabused states of any notion that they or its courts could take any action that would alter the parameters of Section 1983....

As to why state sovereign immunity laws or doctrine cannot foreclose Section 1983 actions brought in state courts, the Supreme Court reasoned:

> ... A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise ...

In *Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (1990)[5], in which police officers were charged with intentional violations of a couple's civil rights under 42 U.S.C. § 1983 (Section 1983), in addition to claims under state law of intentional infliction of emotional distress, this Court stated:

> Under 42 Pa.C.S. § 8550, however, an employee is not protected by the local agency's immunity if his act constitutes a crime, actual fraud, actual malice, or willful misconduct. This Court has held that willful misconduct in this context is synonymous with "intentional tort." *King v. Breach*, 115 Pa.Commonwealth Ct. 355, 540 A.2d 976 (1988). Appellants are therefore not protected by governmental immunity with respect to the count of intentional infliction of emotional distress. Lastly, appellants assert that common law official immunity protects them from the state law claims. Since we have already decided that the negligence claims are barred by govern-

3. 42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suite in equity or other proper proceeding for redress.

4. In *Hafer*, the Supreme Court found that state officials are "persons" under Section 1983 and as such, may be sued in their individual capacities and found liable for damages for violating

protected rights while in the course of their employment.

5. *Lancie* refers to governmental, rather than sovereign immunity. This distinction becomes largely one of semantics, however, as noted by our Supreme Court in *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342, 1344 (1995), when it stated that "the two statutes dealing with governmental and sovereign immunities, viz., the Political Subdivision Tort Claims Act and the Sovereign Immunity Act, are to be interpreted consistently, *as they deal with indistinguishable subject matter* (emphasis added)."

mental immunity, we must only decide if the intentional infliction of emotional distress claim is barred by official immunity. We conclude that it is not. Common law defenses are preserved by 42 Pa.C.S. § 8546 for use by employees of local agencies. This section does not apply, however, if the employee's act constitutes willful misconduct. 42 Pa.C.S. § 8550. Official immunity therefore cannot protect these police officers from an action alleging an intentional tort.

The record in Schnupp's case clearly indicates that at the least, genuine issues of material fact remain pending as to whether Appellees, while acting under the color of state law, committed acts which deprived Schnupp of a federally guaranteed right or interest. Similarly, in *Diaz v. Houck,* 159 Pa.Cmwlth. 274, 632 A.2d 1081, 1087 (1993), this Court noted:

> In a Section 1983 action, a pre-trial detainee is entitled, under the Due Process Clause of the Fourteenth Amendment, to no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment.... A motion for summary judgment in the nature of a demurrer admits as true all well-pleaded, material, relevant facts. Mazzagatti. If the facts, as found in the discovery materials, supporting affidavits, as well as in the non-moving party's pleadings, state a cause of action under any theory of law, then summary judgment must be denied. Id. Under this standard, we hold that the trial court erred in granting Appellees['] [sic] motion for summary judgment because Appellant has alleged facts sufficient to state a cause of action under Section 1983.

Likewise, Schnupp has alleged facts sufficient to state a cause of action under Section 1983.

Accordingly, we reverse the trial court's order granting Appellees' motion for summary judgment and remand the matter for proceedings consistent with this opinion.

### ORDER

AND NOW, this 2nd day of April, 1998, the order of the Court of Common Pleas of Allegheny County granting Appellees' motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.