632 A.2d 1002

Luigi SALERNO and Serafina Salerno, individually and
as parents and natural guardians of Marco Salerno,
deceased, and Estate of Marco Salerno, Appellants,

v.

Chester E. LaBARR, Smithfield Township, Commonwealth of
Pennsylvania, Department of Transportation, Daniel Bamper
and Terri Bamper, LTS Enterprises, Inc., Charles Kosmerl and
Mary Kosmerl, Appellees.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1993.

Decided Oct. 14, 1993.

Brian M. Monahan, for appellants.

Paul A. Barrett, Lucille Marsh and Michael A. Gianetta, for appellees.

William A. Slotter, Sr. Deputy Atty. Gen., for Dept. of Transportation.

Before PALLADINO and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

On July 9, 1989 at 4:55 p.m., Chester LaBarr was operating his automobile in a southerly direction on State Route 309 when he collided with a bicycle driven by Marco Salerno, a ten year old boy, who came from a driveway on the west side of

the highway. The collision unfortunately resulted in the boy's death.

The parents commenced an action against the Commonwealth Department of Transportation (DOT), which maintained the highway, against Smithfield Township, where the accident occurred, and against three adjoining land-owners and LaBarr. All the defendants except LaBarr moved for summary judgment, and the trial judge granted all of those motions.

The plaintiff Salerno filed this appeal from the orders granting summary judgment.

█ Our scope of review from the grant of a motion for summary judgement is limited to a determination of whether the trial court made an error of law or abused its discretion. *Mylett v. Adamsky,* 139 Pa. Commonwealth Ct. 637, 591 A.2d 341 (1991).

█ Preliminarily, we shall address Salerno's somewhat tangential argument that the trial judge was in error when he granted the motion for summary judgment without LaBarr's deposition.

In *Harris by Harris v. Hanberry,* 149 Pa. Commonwealth Ct. 300, 613 A.2d 101 (1992), a similar question was presented. There, after a discussion of the general principles applicable to a motion for summary judgment, we pointed out the proper procedure when the party opposing a motion for summary judgment desires to add to the material at hand in order to oppose the motion. We stated:

> if the party opposing the motion for summary judgment is unable at the time of the filing of the motion to present proof of a genuine issue of fact by affidavit or other means provided in Rule 1035, he may request a continuance. Rule 1035(e) contemplates this situation, providing:
>
> > Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Id.* at 303–304, 613 A.2d at 103.

In that case, the plaintiff alleged that there were four eyewitnesses to the accident whose testimony by deposition were essential. We concluded as follows:

In his answer to the summary judgment motion, and in his answers to defendants' interrogatories, Harris alleges the names of four witnesses to the accident. As the trial court stated, any argument by Harris that the motion should be denied because the Hanberrys did not depose those witnesses is erroneous. As we have pointed out above, if those witnesses were essential to oppose the Hanberrys' affidavits, Harris should have taken the necessary affidavits referred to in Rule 1035(e) and requested a continuance to secure those affidavits or to take depositions. No burden is placed on the moving party to take such affidavits or depositions. Rather, Rule 1035(d) places a burden on the non-moving party to answer and to present specific facts which show a genuine issue to be tried. *Roland [v. Kravco]* 355 Pa.Superior Ct. [493] at 501, 513 A.2d [1029] at 1034 [ (1986) ].

*Id.* 149 Pa.Commonwealth Ct. at 306, 613 A.2d at 104.

The same principle applies to this case. If Salerno's counsel believed that the deposition of LaBarr was necessary for a proper disposal of the motion, he should have filed such an affidavit. He did not and, therefore, the trial judge did not commit error or abuse his discretion when he ruled on the motion without LaBarr's deposition.

In turning to the merits of Salerno's appeal on the facts of this case, we are mindful of the principles in Pa. Rule of Civil Procedure 1035 which command that a motion for summary judgment only be granted in a clear case, that the moving party bears the burden of establishing that no material issue of fact remains and that the record must be viewed in the light most favorable to the non-moving party.

In this case, although Salerno's complaint contained many allegations of negligence, it is apparent from the record that Salerno reduced his argument to two grounds of liability against DOT and one theory of liability against the Township and the adjoining property owners. The first theory espoused against DOT was that DOT allowed a dangerous condition of the highway to exist because it failed to post speed restrictions in the area and permitted a speed of 55 miles an hour in the area where the accident occurred. The second was that vegetation was negligently permitted to grow alongside of the road, impairing the vision of both LaBarr and the Salerno boy.

The proceedings in the trial court, the trial court's opinion and the briefs filed in this Court provide a further delineation and refinement of the issue before us. Specifically, the issue is not whether a jury could find DOT negligent for failing to post the area with a lower speed limit, or find the property owners negligent for failure to care properly for the vegetation alongside the highway. This issue is whether, assuming for the purpose of this motion these failures to act were negligent, there was sufficient evidence of *causation* so that a jury could reasonably find either of these grounds of negligence a substantial factor in bringing about plaintiffs' harm.

We have carefully reviewed the record and compared it with the trial court's analysis of the evidence before him. We determine the Court has fairly stated the evidence and reached the proper conclusion that, while the question of causation is usually for the jury, in this case there is no basis on which a jury could reasonably find causation. *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983) (citing Restatement (Second) of Torts, § 343 (1965)). We quote with approval that portion of the opinion of the Honorable Peter J. O'Brien of the Common Pleas Court of Monroe County.

Plaintiff's theory of liability with respect to the Department of Transportation, Township and adjoining property owners is premised upon their expert's report which concludes that "the actual site distance at the point where Salerno went out into Route 209 is not safe for the posted

speed limit". However, the same expert also reached the following conclusion with respect to the issue of speed:

"Based on the length of skid marks and the condition of the pavement, I estimate LaBarr's speed at the beginning of his skid marks, to have been 25 to 30 m.p.h."

Therefore, the fact that the posted speed limit was in excess of that speed is irrelevant with respect to the causation of the accident. Therefore, the only remaining issue is with respect to the visibility at the location of the accident.

Plaintiffs assert that Defendants, Smithfield Township and Commonwealth of Pennsylvania, Department of Transportation were negligent in maintaining State Route 209 regarding site distancing given the posted, or unposted speed limit. Plaintiffs assert additionally that Defendants Daniel Bamper, et ux, L.T.S. Enterprises, Inc. and Charles Kosmerl, et ux were negligent in maintaining their shrubberies thereby affecting the visibility on Route 209. However, the eyewitnesses to the accident did not observe these alleged hazardous defects to be a factor in this tragic accident.

Chester LaBarr, the operator of the automobile involved in this accident, in sworn answers to interrogatories, stated that he "was traveling at 35 m.p.h. South on 209. [He] saw the little fellow coming down the driveway, turned wheels to the left, hit the brake pedal and wound up in the northbound lane." (Bamper Interrogatories, Question No. 14). LaBarr answered in the negative when asked if his visibility was "imparied [sic] by the presence on or about the road, a curve, hump, depression, incline, downgrade, embankment, signboard, vehicles, people, smoke, dust, materials in the air, rain or other precipitation, *vegetation or any other condition."* (Bamper Interrogatories, Question No. 32). Furthermore, LaBarr stated that as he "approached the driveway to the pizza place, the deceased Plaintiff never looked up and came riding out of the driveway." (Bamper Interrogatories, Question No. 10). LaBarr stated further that the bicyclist was "standing upright on the peddles [sic] and looking down at the front wheel of the bicycle when he

came straight out of driveway onto highway and hit the right front fender." (Bamper Interrogatories, Question No. 13).

Two eyewitnesses, Lynne Richman and Julio Richman, observed the accident from their van as they were waiting to enter Route 209. In sworn deposition testimony, they both confirmed Chester LaBarr's account of the accident. Lynne Richman testified that Chester LaBarr "was driving very slow ... 30, 35 [m.p.h.]; no more than 40 [m.p.h.]." (D.T. Lynne Richman, pg. 21). In fact, Julio Richman testified that Chester LaBarr was going so slow that as he waited he stated:

"[I] turned to my right, there was another car coming up. I waited, and I said, Geez, I could have gone; it's taking this guy so long to get up here. And that's when we seen the accident ... He was going so slow, he only had two or three feet of skid marks."

(D.T., Julio Richman, p. 5, 10). Additionally, both eyewitnesses testified that the deceased never looked for traffic when he entered the intersection. The deceased was looking "[d]own towards his bike, towards the wheel. He wasn't looking up and he wasn't looking side to side. His head was down." (D.T., Lynne Richman, p. 13, 14). The deceased was looking "[d]own, looking at the tire ... He just looked at the wheel." (D.T., Julio Richman, p. 8). "He was pedaling the bicycle at a high rate of speed, looking down." (D.T., Julio Richman, pg. 9).

A fourth eyewitness, Bonnie Johnson, was traveling approximately two car lengths behind Chester LaBarr's vehicle after completing her turn onto Route 209. Bonnie Johnson, in sworn testimony, stated that no vegetation hindered her view (D.T., Bonnie Johnson, pg. 59). She saw the deceased riding "[h]ell-bent towards 209" (D.T, Bonnie Johnson, pg. 48). "He was pedaling hard, fast, and moving no hesitation." (D.T., Bonnie Johnson, pg. 56, 57). "I did not observe the boy turn his head to look at traffic; I observed no hesitation." (D.T., Bonnie Johnson, pg. 21).

As the above referenced testimony indicates *even if the alleged defects in speed and visibility are proven, they are not substantial contributing factors in bringing about the harm* resulting from this unfortunate accident. With regard to the speed of the LaBarr vehicle, Plaintiffs' own expert sets forth that Chester LaBarr was operating at or below the acceptable speed limit for this particular section of Route 209. "Based on the length of skidmarks and the condition of the pavement, I estimate LaBarr's speed at the beginning of his skid marks, to have been 25 to 30 m.p.h." (Exhibit H, pg. 3, Defendant L.T.S. Enterprizes [sic], Inc. Motion for Summary Judgment). Regarding visibility, the above referenced testimony details that the deceased never even bothered to look for oncoming traffic. The presence or absence of vegetation is inconsequential. Furthermore, not only did LaBarr state that he saw the deceased on his bike, but Bonnie Johnson, two car lengths behind LaBarr was able to see the deceased as well. Speed and vegetation growth are simply not substantial factors in bringing about this accident.

In the case at bar, the design, construction and maintenance of the roadways even if it created a sight distance defect with regard to visibility and speed, was not a proximate cause of Marco Salerno's death. *There is no evidence upon which a jury could find the existence of sight and speed defects to be a substantial cause of decedent's death.* Salerno v. LaBarr, (No. 2338 Civil of 1991, filed October 1, 1992) slip op. at pp. 4–8 (emphasis added).

Judgment is affirmed.

## ORDER

AND NOW, this 14th day of October, 1993, the order of the Monroe County Common Pleas Court dated October 1, 1992, at No. 2338–Civil–1991, is hereby affirmed.