Susan C. MUNTZ and Frederick F. Muntz, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, William H. Williams, Paul D. Williams, Jim Wynn Volkswagen–Volvo, Lara Goldstein, AB Volvo, Volvo North American Corp., Michael Earl Eidle, Andrew Kositsky, and Laura Ann Semmelroth.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1995.

Decided March 1, 1996.

Reargument Denied May 3, 1996.

David L. Grove, for Appellants.

James L. Griffith, for Appellees, Volvo North America Corporation, AB Volvo and Jim Wynn Volkswagen–Volvo.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Susan C. Muntz and Frederick F. Muntz (Muntzes) appeal from an order of the Court of Common Pleas of Chester County (trial court) granting Volvo North America Corporation's, Jim Wynn Volkswagen–Volvo's and AB Volvo's (collectively, Volvo) Motion for Summary Judgment.

On October 1, 1991, the Muntzes filed a Second Amended Complaint against Volvo and other parties arising out of an automobile accident which occurred on December 17, 1988. According to the complaint, Susan Muntz was operating a vehicle designed, manufactured and sold by Volvo when a truck struck the vehicle head-on, causing Susan Muntz to suffer serious, painful and permanent injuries. (R.R. at 26a–27a.) The complaint maintains that Volvo is liable for the injuries under theories of negligence, strict liability and breach of implied warranties. Specifically, the Muntzes claim that Volvo failed to design, manufacture and sell a vehicle which included effective and safe passive restraint systems, such as a driver's side air bag, a knee bolster, a safety belt pretension system and a safety belt tensioner.[1] (R.R. at 36a–43a.)

Volvo filed answers to the complaint denying its material allegations.[2] In New Matter, Volvo avers, *inter alia*, that the inclusion of seat belts and air bags in motor vehicles is governed by regulations promulgated under the National Highway and Traffic Safety Act (Safety Act),[3] that those regulations constitute federal preemption of the subject matter and that Volvo complied with the regulations at all times relevant hereto. (R.R. at 62a, 80a.) The Muntzes filed a Reply to New

Matter denying that federal preemption exists here. (R.R. at 112a.)

On April 28, 1993, Volvo filed a Motion for Summary Judgment, asserting that the Muntzes purchased a 1985 Volvo 240 station wagon on December 15, 1984, equipped with a 3–point manual lap and shoulder harness safety belt and a dash board warning light designed to encourage seat belt use. (R.R. at 126a–27a.) According to Volvo, this system met the requirements of applicable federal safety regulations, which preempt other standards requiring passive restraint systems. (R.R. at 127a–28a.) The Muntzes filed an answer to the motion, admitting that their vehicle contained such a system but also asserting that the system did not adequately protect Susan Muntz from injury. (R.R. at 776a.)

On April 15, 1994, the trial court granted Volvo's Motion for Summary Judgment, concluding that there was no genuine issue of material fact and that, under *Pokorny v. Ford Motor Co.*, 902 F.2d 1116 (3d Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990), the Muntzes' cause of action against Volvo was preempted by federal safety regulations as a matter of law.

On May 13, 1994, the Muntzes appealed to this court which, on August 1, 1994, quashed the appeal as interlocutory and not otherwise appealable as of right. *See* Pa.R.A.P. 341(c). However, the order stated that the Muntzes "may, within 30 days of the date of this order, seek certification of the order appealed pursuant to Pa.R.A.P. 341(c)." (Motion of Volvo to Quash, Exh. C.) On August 19, 1994, the Muntzes applied to the trial court for certification of the April 15, 1994 order as a final order. The trial court did not grant the application until December 5, 1994.

On appeal to this court,[4] the Muntzes argue that the trial court erred in relying on

---

1. In addition, Frederick Muntz has filed a claim against Volvo for loss of consortium. (R.R. at 44a.)

2. Volvo North America Corporation and AB Volvo filed an answer on October 30, 1991; Jim Wynn Volkswagen–Volvo filed its answer on November 15, 1991.

3. 15 U.S.C. §§ 1381–1431, *repealed by* the Act of July 5, 1994, P.L. 103–272, § 7(b), 108 Stat.

1379. The provisions of the Safety Act have been amended to some extent and added to federal law codified at 49 U.S.C. §§ 30101–30169.

4. This court has jurisdiction in this case pursuant to section 762(a)(1) of the Judicial Code, 42 Pa. C.S. § 762(a)(1), which gives this court exclusive jurisdiction of appeals from final orders of the courts of common pleas in Commonwealth civil cases. Although the only issues raised here involve non-governmental entities, Count I of the

*Pokorny* and in concluding therefrom that federal safety regulations pertaining to seat belts and air bags preempt this common law action; instead, the Muntzes contend, the trial court was bound by our superior court's decision in *Gingold v. Audi–NSU–Auto Union, A.G.*, 389 Pa.Superior Ct. 328, 567 A.2d 312 (1989).

Also before this court is Volvo's Motion to Quash the Muntzes' appeal. Volvo argues that Pa.R.A.P. 341(c) requires a trial court to act on an application for a determination of finality within 30 days of entry of the order and, because the trial court waited until December 5, 1994 to act on the Muntzes' application in this instance, the appeal should be quashed.

## I. Motion to Quash

■ We first address Volvo's Motion to Quash the Muntzes' appeal under Pa.R.A.P. 341(c) (emphasis added), which provides in pertinent part:

(c) When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the trial court ... may enter a final order as to one or more but fewer than all of the claims or parties only upon an *express determination that an immediate appeal would facilitate resolution of the entire case.* Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order ... that adjudicates fewer than all the claims or parties shall *not* constitute a final order.

Muntzes' Second Amended Complaint alleges negligence against the Commonwealth of Pennsylvania, Department of Transportation with respect to the plan, design and maintenance of the Commonwealth's highways at the site of the accident.

Our scope of review over a trial court's grant of summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *appeal denied*, 537 Pa. 655, 644 A.2d 740 (1994). Summary judgment should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. No. 1035(b).

(1) An *order may be amended* to include the determination of finality *within 30 days of entry of the order.* A notice of appeal or a petition for review may be filed within 30 days after entry of an order as amended....

(2) The trial court ... is *required* to act on an application for a determination of finality under subdivision (c) *within 30 days of entry of the order....* Any denial of such an application shall be reviewable only for abuse of discretion pursuant to Chapter 15.

Here, this court, acting within its discretion,[5] disregarded the provisions of Pa.R.A.P. 341(c) and granted the Muntzes 30 days from the entry of its August 1, 1994 order to apply for a determination of finality. The Muntzes filed such an application on August 19, 1994, complying with this court's order. Because this court's order did *not* direct that the trial court act within 30 days of the Muntzes' application, we deny Volvo's Motion to Quash.

## II. Federal Preemption

■ We next address whether the trial court erred in its reliance upon *Pokorny* in concluding that federal safety regulations preempted the Muntzes' common law action in tort. The Muntzes contend that the trial court should have relied, instead, on *Gingold.* Because we are not bound by decisions of the Third Circuit Court of Appeals and because the preemption analysis of our superior court in *Gingold* is consistent with the U.S. Su-

**5.** Pa.R.A.P. 105 (emphasis added) provides in pertinent part:

(a) **Liberal Construction and Modification of Rules**.... In the interest of expediting decision, or for other good cause shown, an appellate court may, except as otherwise provided in Subdivision (b) of this rule, *disregard the requirements or provisions of any of these rules in a particular case* ... on its own motion and may order proceedings in accordance with its direction.

(b) **Enlargement of Time.** An appellate court for good cause shown may upon application enlarge the time prescribed by these rules or by its order for doing any act, or *may permit an act to be done after the expiration of such time,* but the court may not enlarge the time for filing a notice of appeal, a petition for allowance of appeal, a petition for permission to appeal, or a petition for review.

preme Court decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), we adopt our superior court's analysis in *Gingold.*[6]

■ Article VI of the United States Constitution provides that the laws of the United States shall be the supreme law of the land, anything in the constitution or laws of any state to the contrary notwithstanding. U.S. Const. art. VI, cl. 2. Our consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the states are *not* to be superseded by federal law *unless* that is the clear and manifest purpose of Congress. *Cipollone.* Thus, the ultimate touchstone of preemption analysis is the intent of Congress, which may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Id.*

Here, Congress has included in the Safety Act two provisions, a preemption clause and a savings clause, which explicitly address the issue of preemption. Section 1392(d) of the Safety Act, 15 U.S.C. § 1392(d) (emphasis added) (footnote added),[7] provides in pertinent part:

> Whenever a Federal motor vehicle safety standard[8] established under this subchapter is in effect, no State ... shall have any authority either to establish, or to continue in effect, with respect to any mo-

tor vehicle or item of motor vehicle equipment *any safety standard* applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

In addition, section 1397(k) of the Safety Act, 15 U.S.C. § 1397(k) (emphasis added),[9] provides:

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from *any liability under common law.*

■ We believe that these provisions, when construed together[10] and in light of the presumption *against* preemption of state police power, provide a reliable indicium of congressional intent. *Cipollone; Heiple v. C.R. Motors*, 446 Pa.Superior Ct. 310, 666 A.2d 1066 (1995). Indeed, under section 1392(d) of the Safety Act, the minimum standards for motor vehicle safety promulgated by the federal government preempt *only* state safety standards governing the same item of equipment or aspect of vehicle performance. Section 1392(d) of the Safety Act does *not* provide for federal preemption of state common law tort actions. If that is not a clear enough statement of congressional intent, section 1397(k) of the Safety Act explicitly exempts state common law actions from federal preemption.[11]

---

6. In *Pokorny*, the Third Circuit Court of Appeals recognized that Congress expressly considered the issue of preemption in sections 1392(d) and 1397(k) of the Safety Act and *explicitly stated* its intent *not* to preempt common law actions. Nevertheless, contrary to *Cipollone*, which held that a statement of expressed congressional intent ends the analysis, the court then proceeded to examine whether certain common law actions were *impliedly* preempted by the Safety Act. The court concluded that negligence and product liability actions against an automaker based on the absence of air bags and automatic seat belts in a vehicle present an actual conflict with regulations promulgated under the Safety Act and, therefore, are *impliedly* preempted. *Pokorny.*

7. This provision, somewhat modified, can now be found at 49 U.S.C. § 30103(b)(1).

8. Section 1391(2) of the Safety Act, 15 U.S.C. § 1391(2) (emphasis added), defines "Motor vehicle safety standards" as follows:

> (2) "Motor vehicle safety standards" means a *minimum standard* for motor vehicle perfor-

mance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria.

9. Section 1397(k) of the Safety Act was formerly section 1397(c) of the Safety Act and can now be found at 49 U.S.C. § 30103(e) in slightly modified form.

10. Parts of statutes are *in pari materia* when they relate to the same thing; such shall be construed together, if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932.

11. We recognize, as the superior court did in *Heiple*, that preservation of the common law is in the best interests of society:

> It is apparent that the [Safety Act] is intended to be *supplementary of and in addition to the common law of negligence and product liability.* The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that

Because the intent of Congress is manifest in sections 1392(d) and 1397(k) of the Safety Act, there is no need for us to perform an implied preemption analysis in order to infer that intent.[12] Thus, we conclude that federal safety regulations promulgated pursuant to the Safety Act do not preempt state common law tort actions.

Accordingly, because Volvo is not entitled to judgment as a matter of law, we reverse the trial court's grant of summary judgment.

### ORDER

AND NOW, this 1st day of March, 1996, the Motion to Quash Plaintiff's Appeal filed by Volvo North America Corporation, Jim Wynn Volkswagen–Volvo and AB Volvo is DENIED, and the order of the Court of Common Pleas of Chester County, dated April 15, 1994, is REVERSED.

SILVESTRI, Senior Judge, concurring and dissenting.

The decision and order of the majority has two distinct components: 1) it denies Volvo's

motion to quash Muntzes' appeal with which I concur; and 2) it reverses the order of the Court of Common Pleas of Chester County (trial court) which had granted Volvo's motion for summary judgment with which I disagree. The majority concludes that Volvo is not entitled to judgment as a matter of law[1] because federal safety regulations promulgated pursuant to the National Highway and Traffic Safety Act (Safety Act)[2] do not preempt state common law tort actions. Because I disagree with the majority's conclusion, I file this dissent.

The majority correctly notes that Article VI of the United States Constitution provides that the laws of the United States shall be the supreme law of the land, anything in the constitutions or laws of any state to the contrary notwithstanding. U.S. Const. art. VI, cl. 2. Federal preemption of state law can occur in three types of situations: 1) where Congress explicitly preempts state law; 2) where preemption is implied because Congress has occupied the entire field; and

---

fairly meet the emerging and developing needs of our time. The common law standard of a duty to use reasonable care in light of all the circumstances can at least serve the needs of our society until the legislature imposes higher standards or the courts expand the doctrine of strict liability for tort. The [Safety] Act is a salutary step in this direction and not an exemption from common law liability.

*Heiple,* 446 Pa.Superior Ct. at ——, 666 A.2d at 1086 (emphasis in original), quoting *Larsen v. General Motors Corp.,* 391 F.2d 495, 506 (8th Cir.1968).

12. In *Cipollone,* the U.S. Supreme Court stated:

*When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority,"* [citation omitted], *"there is no need to infer congressional intent to pre-empt state laws from the substantive provisions"* of the legislation. [citation omitted] Such reasoning is a variant of the familiar principle of *expression unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

*Cipollone* at 517, 112 S.Ct. at 2618 (emphasis added). Thus, the Court has made it clear that, whenever Congress includes an express preemption clause in a statute, courts ought to limit

themselves to the preemptive reach of that provision without essaying any further analysis under the various theories of implied preemption. *Heiple.*

However, when Congress does *not* expressly state its intent to preempt state law, such intent may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary regulation. *Gingold.* Moreover,

[i]n the *absence* of an express congressional command, state law is pre-empted if that law actually conflicts with federal law.

*Cipollone* at 516, 112 S.Ct. at 2617 (emphasis added). We note that, if we were to perform an implied preemption analysis here to determine whether we can reasonably infer that Congress left no room for the states to supplement the federal law, we would have to conclude that, because Congress intended to establish *minimum* safety standards, Congress did leave room for the states to supplement the federal law.

1. Where, as here, there is no genuine issue of material fact, the sole issue presented is whether or not the moving party is entitled to judgment as a matter of law. *See* Pa.R.C.P. No. 1035(b).

2. 15 U.S.C. §§ 1381–1431, *repealed by* the Act of July 5, 1994, P.L. 103–272, § 7(b), 108 Stat. 1379. The provisions of the Safety Act have been amended to some extent and added to federal law codified at 49 U.S.C. §§ 30101–30169.

3) where preemption is implied because there is an actual conflict between federal and state law. *See Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988).

Section 1392(d) of the Safety Act contains a preemption provision and provides, in pertinent part, as follows:

> Whenever a Federal motor vehicle standard established under this subchapter is in effect, no State or political subdivision of a State shall, have authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.[3]

15 U.S.C. § 1932(d) (footnote added). It is important to note that this section only prohibits states from implementing their own safety standards; it does not directly address state common law. Section 1397(k) of the Safety Act, 15 U.S.C. § 1397(k), however, does specifically provide that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law." Thus, there is no dispute that the Safety Act does not expressly preempt the Muntzes' common law actions. *See Pokorny v. Ford Motor Co.,* 902 F.2d 1116 (3d Cir.), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990) (the question of express preemption is properly analyzed only after consideration of both Sections 1392(d) and 1397(k)).

Volvo contends that preemption is implied, not because Congress has occupied the entire field, but rather because there is an actual conflict between federal and state law. The issue then is whether or not the Muntzes' common law actions are impliedly preempted by the Safety Act and Federal Motor Vehicle Safety Standard 208 (Standard 208) which requires automobile manufacturers to provide one of three types of occupant restraint systems.[4]

In *Pokorny,* the court held that claimant's common law action does present an actual conflict with the Safety Act and Standard 208 to the extent that it alleges liability for the manufacturer's failure to include air bags and automatic seat belts on the vehicle in question. In so doing, the court noted that Standard 208 was specifically designed to give automobile manufacturers a choice among several options when providing restraint systems for passengers. The court then concluded that to allow such an action would frustrate the goals of the federal regulatory framework and undermine the flexibility that Congress and the Department of Transportation intended to give automobile manufacturers in this area. The court further concluded that since potential common law liability interferes with regulatory matters chosen by the federal government to achieve the Safety Act's stated goals, such actions are impliedly preempted.[5]

The trial court did not err in its reliance upon *Pokorny* in concluding that Volvo is entitled to judgment as a matter of law because the Muntzes' common law actions were impliedly preempted by the Safety Act and Standard 208. *See Nobers v. Crucible, Inc.,* 431 Pa.Superior 398, 636 A.2d 1146, *petition for allowance of appeal denied,* 537 Pa. 665, 644 A.2d 1201 (1994) (where a federal circuit court has spoken on a federal question, the ultimate answer to which has not been provided by the United States Supreme Court, it

---

**3.** The definition of motor vehicle safety standards is found at Section 1391(2) of the Safety Act, 15 U.S.C. § 1391(2). Federal regulations may have the same preemptive effect as federal statues. *Louisiana Public Service Commission v. Federal Communications Commission,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).

**4.** For 1985 model year passenger cars, Standard 208 provided that a manufacture had the option to equip a car with 1) air bags; 2) automatic seat belts, or 3) manual three-point seat belts. *See* 49 C.F.R. § 571.208, S4.1.2. (1984).

**5.** The court in *Pokorny* noted that Section 1397(k) should be construed to permit only those common law actions for design defect that do not frustrate or undermine the Safety Act's regulatory framework; thus, the court held that claimant's action was not preempted to the extent that it asserts liability for manufacturer's failure to provide protective netting over the vehicle's windows.

is appropriate to follow the circuit court's decision).

Accordingly, I would affirm the order of the trial court which granted Volvo's motion for summary judgment.