IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanglwood North Community    :
Association    :
    :
    :
       v.    :
    :
Patrice C. Boystak,    :    2307 C.D. 2014
          Appellant    :    Argued: September 14, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY          FILED: January 6, 2016

Patrice Boystak (Boystak) appeals from an order of the Court of Common Pleas of Pike County (common pleas court) that granted in part and denied in part Tanglwood North Community Association's (Association) motion for summary judgment.[1]

---

[1] The common pleas court granted the Association's motion for summary judgment in part:

> [I]nsofar as Defendant [Boystak] is declared in violation of the restrictive covenants of [the] . . . Association and is Ordered to remove the garage from the 50' setback right-of-way within 30 days of the date of service of this Order, and to conform all future improvements to Defendant's [Boystak's] land to this Order.

Order of the Common Pleas Court, November 21, 2014, at 1. The common pleas court denied the Association summary judgment in part "without prejudice as to Plaintiff's [Association's] prayer for the charge of a *per diem* penalty." Order of the Common Pleas Court at 1.

## I. Amended Complaint

On August 19, 2013, the Association filed an amended complaint and alleged:

1.) The . . . Association is a non-profit corporation organized and existing within the laws of the Commonwealth of Pennsylvania . . . .

2.) . . . Boystak is an individual with a mailing address of P.O. Box 68, Tafton . . . .

3.) . . . Boystak is the record owner of the property situated at Lot 298N, Map 6N, 298 Brianhead Lane, Tanglwood North Community Association, Tafton . . . .

4.) On August 14, 1967, Russell Compton and C. Alvin Cosgrove conveyed said property to Tanglwood Lakes, Inc. . . . .

5.) <u>On February 12, 1984, said property was conveyed by Tanglwood Lakes, Inc. to Phil L. Boystak and Patrice C. Nickerson . . . .</u>[2] (Emphasis added.)

6.) Said Deed provides that the land is 'Under and Subject to all restrictions set forth in a certain document entitled Restrictions Pertaining to Lots in Tanglwood Lakes' . . . .

7.) On April 1, 1986 . . . [the] Association, Academy Insurance Group, Inc., Ammest Realty, Inc. and Tanglwood Lakes, Inc. entered into a Comprehensive Settlement Agreement . . . .

---

[2] Boystak purchased Lot 298, Map 6, Tanglwood Lakes, Inc. from the developer on or about February 12, 1984. Boystak constructed a home on the lot to be used seasonally. Boystak relocated full-time to the Pike County home and determined there was a need for more storage and garage space. In late winter of 2013, Boystak sought permission from the Association to construct a garage. In late March 2013, Boystak applied for a building permit from Tanglwood's Architectural Committee (Committee).

8.) Said agreement defines the . . . Association as the community association of the name representing lot owners in the development . . . .

9.) . . . [Association] entered into a Settlement Agreement on the 22nd day of September, 1994, by and through [the] . . . Association, Tanglwood Lakes, Inc., and John P. Taylor . . . .

10.) On March 15, 1996, Tanglwood Lakes, Inc. conveyed the property at issue to [the] Association . . . . (Emphasis added.)

11.) According to said Deed . . . Boystak is bound by the restrictive covenants that run with the property. (Emphasis added.)

12.) The restrictive covenants of [the] Association . . . specifically state, under Paragraph 13, 'No part of any structure shall be erected closer to any side line of the lot than 15' nor closer than 30' to the property line opposite the line adjacent to a street, nor shall any part of any structure be erected closer than 50' from such boundary' . . . .

13.) The restrictive covenants of . . . [the] Association . . . specifically state, under Paragraph 3, 'before commencing construction of any improvements on the Lot, and before commencing any alterations or additions thereto, the lot owner shall obtain the approval of Tanglwood Lakes, Inc. in writing of the plans and location of such improvement . . . and the construction or installation of any such improvements shall be carried out in strict conformity with such approved plans. Lot owner will submit detailed plans in duplicate to Tanglwood Lakes, Inc.' . . . .

14.) . . . Boystak, prior to May 16, 2013 provided a building permit application . . . . (Emphasis added.)

15.) Prior to May 16, 2013, the permit application of . . . Boystak was rejected because the alleged garage . . . was within the 50' foot setback from the right-of-way of any street. (Emphasis added.)

16.) . . . Boystak was informed that the . . . permit application was denied because the garage as planned to be erected was within the 50' foot setback from the right-of-way of any street. (Emphasis added.)

17.) On May 16, 2013 . . . Boystak . . . began erection of the garage on [Boystak's] property within the 50' foot setback.

18.) The President of the . . . Association . . . went to the contractors and indicated . . . that the contractors must cease and desist from building said garage as the garage was within the 50' foot setback.

19.) The subcontractors and contractors of [Boystak] ignored the President'[s] request and erected the garage on [Boystak's] property by the end of May 16, 2013. (Emphasis added.)

20.) On or about May 17, 2013 . . . [Boystak] forwarded to the . . . Association a non pro tunc variance [request]. . . . (Emphasis added.)

21.) . . . Boystak, in direct violation of the restrictive covenants of the . . . Association and after being orally told and in writing that the garage could not be placed the within 50' foot setback in violation of the restrictive covenants of the . . . Association, erected said garage.

22.) All of the properties in the . . . Association of which [Boystak] owns said property have restrictive covenants which run with the land.

23.) Although . . . Boystak has been informed that [Boystak] did not obtain the proper building permit,

[Boystak] has entered onto the property and erected a garage within the 50' foot setback.

24.) [Boystak's] performance of work on the . . . property for the erection of a garage without a building permit is a clear violation of the restrictive covenants of the . . . Association.  (Emphasis added.)

25.) Under the Rules and Regulations of the . . . Association . . . 'The Board does not have authority to make exceptions for restrictions which are placed on [the] Association . . . properties' . . . .

. . . .

27.) Permitting the erection of a garage on . . . [Boystak's] property without a building permit causes irreparable harm to the . . . Association and all members of the . . . Association.

28.) The issuance of a Permanent Injunction is reasonable in order to abate . . . [Boystak's] wrongful actions.

29.) The issuance of a Permanent Injunction is reasonable as . . . [Boystak's] garage was erected without the issuance of a proper building permit from the . . . Association.  (Emphasis added.)

Amended Complaint, August 19, 2013, Paragraphs 1-25 and 27-29 at 1-6; Reproduced Record (R.R.) at 5a-9a.[3]

On September 30, 2013, Boystak denied the Association's allegations and raised in her new matter the following:

2. [The Association's] complaint is barred in that it does not possess the requisite power or authority to enforce the underlying covenants.

---

[3] Page 6 of the Amended Complaint containing Paragraphs 25 and 27-29 is missing from the R.R.

3. [The Association's] complaint is barred in that [the Association] is not the successor in interest to the original developer of the subject development.

4. [The Association's] complaint is barred in that [the Association] is attempting to enforce the subject covenants of Tanglwood Lakes, Inc. (Emphasis added.)

5. [The Association's] complaint is barred in that [the Association] has not become invested in any enforcement capacity of the subject covenants.

6. [The Association's] complaint is barred in that [the Association] lacks capacity to bring the subject suit, is not known as it represents itself, and lacks power to bring the subject suit and to specifically sue [Boystak].
. . . .
9. [The Association's] complaint is barred in that [the Association] alleges powers existing only in the original developer.
. . . .
11. [The Association's] complaint is barred in that [the Association's] suit is commenced under the Tanglwood Lake's restrictions in [Boystak's] deed and not under the Association's Rules and Regulations. (Emphasis added.)
. . . .
15. [The Association's] complaint is barred in that [the Association] is estopped from bringing the instant suit because it failed to timely exercise its claim under its own rules and regulations. (Emphasis added.)

Defendant's Answer to Plaintiff's Amended Complaint and New Matter, September 30, 2013, Paragraphs 2-6, 9, 11, and 15 at 4-6.

## II. Motion for Summary Judgment

On June 24, 2014, the Association moved for summary judgment and asserted:

6

4.) <u>According to said Deed, [Boystak] is bound by the restrictive covenants that run with the property</u>. (Emphasis added.)

. . . .

6.) The restrictive covenants of [the] Association . . . state, <u>under Paragraph 3, 'before commencing any construction of any improvements on the Lot, and before commencing any alterations or additions thereto, the lot owner shall obtain the approval of Tanglwood Lakes, Inc. in writing</u> . . . . Lot owner will submit detailed plans in duplicate to Tanglwood Lakes, Inc. and the permit will be endorsed on one set of plans and returned to lot owner, the other set of such plans being retained by Tanglwood Lakes, Inc.' . . . . (Emphasis added.)

. . . .

9.) <u>Prior to May 16, 2013, the permit application of . . . [Boystak] was rejected because the alleged garage that . . . Boystak requested to be placed on [Boystak's] property was within the 50' foot setback from the right-of-way of any street</u>. (Emphasis added.)

10.) . . . <u>[Boystak] was informed that . . . [Boystak's] permit application was denied</u> . . . . (Emphasis added.)

11.) On May 16, 2013, . . . [Boystak], by and through her agents . . . and its subcontractors . . . began erection of the garage on [Boystak's] property within the 50' foot setback.

12.) The President of the . . . Association . . . went to the contractors and indicated to the contractors that the contractors must cease and desist from building said garage as the garage was within the 50' foot setback . . . .

13.) <u>The subcontractors and contractors of . . . [Boystak] ignored the President['s] . . . request and erected the garage on . . . [Boystak's] property by the end of May 16, 2013</u>. (Emphasis added.)

14.) <u>On or about May 17, 2013 . . . [Boystak] forwarded to the . . . Association a nunc pro tunc variance</u> [request]. . . . (Emphasis added.)

. . . .

17.) Although . . . [Boystak] has been informed that . . . [Boystak] did not obtain the proper building permit, . . . [Boystak] has entered onto the property and erected a garage within 50' foot setback.

18.) [Boystak's] performance of work on [Boystak's] property for the erection of a garage without a building permit is a clear violation of the restrictive covenants of the . . . Association.

19.) <u>Under the Rules and Regulations . . . 'The Board does not have the authority to make exceptions for restrictions which are placed on . . . [the] Association . . . properties due to deed restrictions, covenants, federal, state, county, township or municipal laws, health and building codes'</u> . . . . (Emphasis added.)

. . . .

22.) The issuance of a Permanent Injunction is reasonable as . . . [Boystak's] wrongful actions.

. . . .

29.) <u>There are no genuine issues of material fact at issue in the above case</u>. (Emphasis added.)

30. [The Association] is entitled to judgment as a matter of law.

Plaintiff's Motion for Summary Judgment, June 24, 2014, Paragraphs 4, 6, 9-14, 17-19, 22, and 29-30 at 1-6.

Boystak responded:

8. Denied as stated. . . . <u>[Boystak] submitted a building permit application on or about March 2013, seeking permission to construct the subject structure.</u> (Emphasis added.)

8

9. Denied. <u>The . . . [Association] failed to timely respond to the subject application.</u>  (Emphasis added.)
. . . .
11. . . . <u>[Boystak] did initiate construction of the subject structure on or about May 12, 2013, but only after the . . . Association failed to timely respond to the application.</u>  (Emphasis added.)

12. . . . <u>Although a representative of . . . [the Association] appeared at the construction site, no one from Tanglwood Lakes, Inc. complained of non-compliance under the subject restrictive covenants</u>.  (Emphasis added.)
. . . .

Defendant's Answer to Plaintiff's Motion for Summary Judgment, July 16, 2014, Paragraphs 8-9 and 11-12 at 2-3.


### III. Common Pleas Court's Disposition

The common pleas court determined:

Plaintiff [the Association] avers summary judgment is appropriate because Defendant [Boystak] is, via the deed by which Defendant [Boystak] purchased the Property, 'bound by the restrictive covenants that run with the property,' which covenants prohibit erection of any structure 'closer than 50 [feet] from the right of way for any street or road' . . . .
. . . .
<u>For the foregoing reasons, there is no genuine issue of material fact as to the applicability of the subject Restrictions to Defendant's [Boystak's] property.  There is also no genuine issue of material fact as to Plaintiff's [the Association's] right to enforce those Restrictions as to Defendant's [Boystak's] property, which the record clearly demonstrates</u> . . . .  (Emphasis added.)
. . . .
Plaintiff [the Association] avers it has no authority to make exceptions to restrictions imposed on subject

9

properties due to, among other things, deed restrictions . . . . Thus Plaintiff [the Association] reasons, its failure to timely rule, under its own regulation, on Defendant's [Boystak's] permit application and/or variance, is a moot issue, because Plaintiff [the Association] lacks the power to grant the relief which Defendant [Boystak] demanded. . . . .

Plaintiff [the Association] alleged Defendant [Boystak] constructed the garage within the setback . . . . Defendant [Boystak] admitted the same . . . . The undisputed nature of Defendant's [Boystak's] permit and variance applications, specifically that Defendant [Boystak] intended to build a garage within the 50' setback area despite applicable deed restrictions, precluded Plaintiff's [the Association's] approval thereof. (Emphasis added.)

For the foregoing reasons, there is no genuine issue of material fact as to Plaintiff's [the Association's] lack of authority to approve Defendant's [Boystak's] permit and variance applications, which the record clearly demonstrates.[4]

---

[4] In regards to the issue of penalties, the common pleas court concluded:

> However, in practice the fine provision itself is unclear. Specifically, . . . in the Rules as provided to this Court, a footnote inserted after '$200 per/day' which reads 'Revised-see Minutes of the Board of Directors 1-16-05.' The minutes to which the footnote refers are not included in the record at hand. Whether the revision established the fine as stated in the Rules submitted to this Court is unclear. Thus Plaintiff's [Association] is **DENIED IN PART**, insofar as Plaintiff's [Association's] prayer for relief in the form of a *per diem* penalty in the amount of $200 per day since May 16, 2013 is **DENIED** without prejudice . . . . (Emphasis in original.)

Opinion of the Common Pleas Court, November 21, 2014, at 8-9. Our legal staff has pointed out to this Court that the common pleas court's order is a final order subject to appeal because it disposes of all claims between the parties. The order just does not grant all the relief sought.

Opinion of the Common Pleas Court at 5-7. The common pleas court granted summary judgment in favor of the Association.

## IV. Issue

On appeal Boystak argues[5] that the common pleas court erred when it granted the Association's motion for summary judgment. Specifically, Boystak asserts that she filed her application with the Committee on or about March 2013,[6] which was acknowledged in the Association's amended complaint prior to the May 16, 2013, denial of the application. However, Boystak points out that the Association cannot document or refute when the application was received or when it was formally rejected. Boystak infers that the best the Association had done was to speculate that the application was rejected on or about May 16, 2013.

The Association responds that Boystak had no right to build a garage within the fifty-foot setback and that her actions were in clear defiance of the provisions imposed by the restrictive covenant. Last, the Association argues that

---

[5] This Court's review of a common pleas court's grant of summary judgment is limited to a determination of whether the common pleas court erred as a matter of law or abused its discretion. Salerno v. LaBarr, 632 A.2d 1002 (Pa. Cmwlth. 1993). Summary judgment should only be granted in a clear case and the moving party bears the burden of demonstrating that no material issue of fact remains. Id. The record must be reviewed in the light most favorable to the non-moving party. Id.

[6] In Boystak's brief in response to the Association's motion for summary judgment, she stated: "At or about March 28, 2013, Boystak submitted an un-dated Building Permit Application (Exhibit G of the Association's Amended Complaint) to the Association . . . Boystak proceeded to construct the garage completing the project on May 15, 2013. The denial of the application was reported at the May 19, 2013, Association meeting." (Emphasis added.) Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, July 16, 2014, at 1-2; R.R. at 205a-06a.

the common pleas court correctly found, as a matter of law, that the Association lacked authority to make an exception or grant the variance *nunc pro tunc*.

Paragraph 13 (Restrictive Covenant) of the Tanglwood North Community Association provides:

> No part of any structure shall be erected closer to any side line of the lot than 15' nor closer than 30' to the property line opposite the line adjacent to a street, nor shall any part of any structure be erected closer than 50' from the right of way for any street or road, provided that in the event that any boundary line of the lot adjoins the Tanglwood Valley Country Golf Club Course no part of any structure shall be erected at a point on a site which has an elevation less than 4' higher than the elevation of the spillway on the lake on which the lot is situated and in no event shall any portion thereof be within fifty feet of the lot line facing the lake.

Pike County Deed Book, Volume 245, page 955; R.R. at 27a.

Section III- Building and Architectural Committee (BAC) of the Tanglwood North Community Association, Inc. Rules and Regulations provides:

> **C. Building Permit Application Process**
>
> 1. New Construction and Additions/Major Alterations to Existing Buildings
>
> Members must be in good standing: <u>All obligations to the BAC and Tanglwood North Community Association, Inc. must be met before a TNCA building permit will be issued</u>. (Emphasis added.)
>
> <u>Before any work can be started, the contractor or the member must obtain a building permit application from the BAC through the . . . Association office (Paper Birch</u>

12

North). The applicant will at that time be provided with Tanglwood North BAC Rules and Regulations governing new construction and building permit application process. (Emphasis added.)

. . . .

BAC approval of the permit application must occur before construction can begin. The BAC agrees that the review and approval, hereunder, shall not be unreasonably withheld and shall not exceed thirty (30) days. (Emphasis added.)

Any request for deviation of these rules and regulations must be submitted as a variance request to TNCA BAC for approval. See Variance Process.

. . . .

## L. VARIANCES

Procedure

Any request to deviate from the rules and regulations regarding new construction or alterations of land or previously constructed buildings must be made to the BAC in writing. The variance request will be forwarded to the Board with a recommendation to accept or reject the request for a variance. (Emphasis added.)

Time Constraints

1. The member/contractor must be aware that the BAC requires a reasonable amount of time to review the request and make any recommendation. The BAC must submit their [sic] findings to the Board no later than one week before the regular Board meeting in order for the request to be placed on the Board Agenda for the next meeting. Refer to the BAC Committee for the scheduled meetings.

2. Upon review of the request for variance, the BAC may require notification of neighbors to allow for their input. The BAC will notify the member/contractor of this

13

necessity and send notices by regular mail to the neighbors involved as determined by the BAC . . . .

3. It is the responsibility of the contractor/member to ensure the timelines are met when they submit their request.

Tanglwood North Community Association, Inc. Rules and Regulations, effective August 17, 1997, last revision September 21, 2008, Section III C at C-9-10; R.R. at 182a-83a.

Last, Article XIV of the Architecture and Planning Committee By-Laws provides:

Section 1. No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and the natural environment by the Architecture and Planning Committee composed of three (3) or more representatives appointed by the Board. In the event said Board, or its designated committee, fail to approve or disapprove within thirty (30) days after said plans and specifications have been submitted to it, or in any event, if no suit to enjoin the addition, alteration, or change has been commenced prior to the completion thereof, approval will not be required and this Article will be deemed to have been fully complied with. (Emphasis added.)

Article XIV of the By-Laws (Revised October 2012) at 18; R.R. at 213a.

In <u>Logston v. Penndale, Inc.</u>, 576 A.2d 59, 62 (Pa. Super. 1990), our Pennsylvania Superior Court stated:

> No formal or specific technical language is required to set forth a covenant running with the land, nor is it required that the covenant be expressed as such . . . . <u>Restrictive covenants which restrict the use of property, although not favored by the law, are legally enforceable</u> . . . . <u>Restrictive covenants are to be strictly construed against persons seeking to enforce them</u> and claiming benefit thereof <u>and in favor of free, unrestrictive use of property</u> . . . . (Citations omitted and emphasis added.)

A review of the record indicates that there remains a question of material fact as to when Boystak submitted her application for the building permit. Boystak stated in her pleadings that the date was "on or about March 20, 2013." <u>See</u> Defendant's Answer to Plaintiff's Motion for Summary Judgment, Paragraph 8 at 3. Also, the record is devoid as to what date the BAC received Boystak's application for a building permit. The Association only admits that "[p]rior to May 16, 2013, the permit application was rejected." <u>See</u> Plaintiff's Amended Complaint, Paragraph 15 at 4; and Plaintiff's Motion for Summary Judgment, Paragraph 9 at 3. Again, there is a question of material fact because pursuant to Section III C. of the Association's Rules and Regulations, the BAC must issue a decision within thirty days of the applicant's request for a building permit. So, giving the Association the benefit of the doubt, if Boystak filed her application for a building permit as late as March 31, 2013, BAC would have thirty days to respond or until April 30, 2013. Without any evidence to establish if and when the application was sent and received, there remains a genuine issue of material fact. Although the Association argues that Boystak's actions were in clear violation of the restrictive covenant, the fact remains that the BAC must determine whether to approve or reject the application for a building permit within thirty days of the

15

request. Because there is a genuine issue of material fact, the common pleas court erred as a matter of law when it granted summary judgment in favor of the Association.[7]

Accordingly, this Court reverses the common pleas court's grant of summary judgment and remands for further proceedings consistent with this opinion.

_____

BERNARD L. McGINLEY, Judge

---

[7] Last, Boystak argues that both parties cite to Section III, L (Variances) of the Rules and Regulations to support their respective positions. The Association claims that it cannot issue a variance in conflict with the restrictive covenant. Boystak responds that the Association has issued at least one prior set-back variance in the past. Boystak submits that this constitutes another issue of material fact. There is no need to reach the issue of whether the BAC can issue a variance *nunc pro tunc*. The central issue is what date the application for a building permit was filed with BAC and what date BAC received it.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanglwood North Community    :
Association    :
   :
v.    :
   :
Patrice C. Boystak,    :    2307 C.D. 2014
           Appellant    :

## **O R D E R**

AND NOW, this 6th day of January, 2016, the order of the Court of Common Pleas of Pike County in the above-captioned matter is reversed and this matter is remanded to the common pleas court for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
BERNARD L. McGINLEY, Judge