**George Ivan LOPEZ, Petitioner**

v.

**PA. DEPARTMENT OF CORRECTIONS, Commissioner, John Wetzel, Pa. Governor, Tom Corbett, Superintendent, Louis S. Folino, Jane and John Doe, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2014.

Decided June 26, 2015.

George Ivan Lopez, pro se.

Joseph G. Fulginiti, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, PATRICIA A. McCULLOUGH, Judge, JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

Before this Court are preliminary objections in the nature of a demurrer filed by the Pennsylvania Department of Corrections (DOC) on behalf of John Wetzel, Secretary of Corrections; Tom Corbett, former Governor of Pennsylvania; and Louis S. Folino, former Superintendent at the State Correctional Institution at Greene County (SCI–Greene) (together, Respondents) in response to a *pro se* petition for writ of mandamus (Petition) filed by George Ivan Lopez (Lopez) in our original jurisdiction. We sustain in part and overrule in part Respondents' preliminary objections.

## I. Facts/Preliminary Objections

▮ Lopez is a capital case prisoner[1] confined at SCI–Greene. As asserted in the Petition,[2] the facts of this case are as

---

1. Once the governor signs an inmate's execution warrant, the inmate is moved to the capital case unit. *Clark v. Beard*, 918 A.2d 155, 161 (Pa.Cmwlth.2007) ("The warrant is the trigger for moving an inmate to the Capital Case Unit...."); *see also* section 4303 of the Prisons and Parole Code, 61 Pa.C.S. § 4303.

2. In considering preliminary objections, this Court accepts "as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced

follows. Capital case prisoners at SCI–Greene are held in solitary confinement separate from the prison's general population. Capital case prisoners are permitted to have two hours of outside recreational activity five days a week and three showers per week. In the capital case unit, cell lighting is on twenty-four hours a day. Lopez avers that because of the constant cell lighting, he cannot receive uninterrupted sleep, resulting in physical ailments and psychological disorders. (Petition at ¶¶ 1, 9, 11, 13, 24.)

Lopez filed the Petition with this Court on February 5, 2014. In the Petition, Lopez asserts that Respondents are violating his Fourteenth Amendment due process and equal protection rights and his Eighth Amendment protection against cruel and unusual punishment because of his solitary and punitive confinement, twenty-four-hour cell lighting, and inability to participate in a work program. (Petition at ¶¶ 22, 25, 28, 33–34.) Lopez seeks an order compelling Respondents to: provide access to adequate medical and mental health care; cease solitary and punitive confinement for capital case prisoners; cease the twenty-four-hour cell lighting; establish a general population unit for capital case prisoners; modify the grievance system; provide a fair opportunity for all capital case prisoners to have access to the work program; and permit discovery. Lopez does not contest that he is appropriately housed in the capital case unit.

Respondents filed preliminary objections to Lopez's Petition in the nature of a demurrer. Respondents assert that Lopez has not been denied his due process rights by being held in solitary confinement in the capital case unit because prisoners do not have a protected liberty interest in which unit they are housed. Respondents also assert that Lopez has failed to state a claim that his confinement conditions violate the Eighth Amendment prohibition against cruel and unusual punishment because Lopez has failed to allege that he specifically suffers from any physical or psychological ailments, and conditions in the capital case unit are merely restrictive inconveniences that Lopez must endure due to his conviction.

## II. Discussion

 Mandamus is an extraordinary writ which is not to be granted in doubtful cases. *Bronson v. Pennsylvania Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021, 1023 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981). Mandamus only lies where "(1) the petitioner has a clear legal right to enforce the performance of the act, (2) the defendant has a corresponding duty to perform the act, and (3) the petitioner has no other adequate or appropriate remedy." *Saunders v. Pennsylvania Department of Corrections*, 749 A.2d 553, 556 (Pa.Cmwlth. 2000). "Mandamus is based upon a duty by an agency to follow a law and is available only when, under a correct interpretation of the law, the agency has an absolute ministerial duty—no choice—to act in a certain way." *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 777 (Pa.Cmwlth.1997). "Mandamus is appropriate only to enforce established rights; it is not available to establish legal rights. Further, a court may not direct the manner in which an official performs a discretionary function." *Buehl v. Beard*, 54 A.3d 412, 416 (Pa.Cmwlth.2012).

therefrom." *Saxberg v. Pennsylvania Department of Corrections*, 42 A.3d 1210, 1211 (Pa. Cmwlth.2012). "In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Id.* at 1211–12.

## A. Due Process

Respondents' first preliminary objection is that Lopez has failed to state a claim that his Fourteenth Amendment due process rights have been violated. In analyzing a due process claim, the first step is to determine "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir.2000). Once it is determined that the interest is protected by the Due Process Clause, the issue is then "what process is due to protect it." *Id.* at 143.

"It is entirely a matter of [DOC's] discretion where to house an inmate." *Clark v. Beard*, 918 A.2d 155, 160 (Pa.Cmwlth.2007). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). Under DOC's regulations, "an inmate does not have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa.Code § 37.11. "[J]udges may not indiscriminately denominate the place a prisoner is housed; statutes and regulations establish the presumptive place of confinement." *Clark*, 918 A.2d at 161. A change in the level of an inmate's security within a prison is not the type of deprivation of a liberty interest that provides a legitimate basis for an inmate lawsuit. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). As this Court stated in *Dial v. Vaughn*, 733 A.2d 1 (Pa.Cmwlth.1999):

> [C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and denials of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison—are

necessarily functions of prison management that must be left to the broad discretion of prison officials.

*Id.* at 6 (citation and quotations omitted).

Section 4303 of the Prisons and Parole Code provides for the confinement of capital case prisoners as follows:

> Upon receipt of the warrant [specifying a day for execution], *the secretary shall, until infliction of the death penalty or until lawful discharge from custody, keep the inmate in solitary confinement.* During the confinement, no person shall be allowed to have access to the inmate without an order of the sentencing court, except the following:
>
> (1) The staff of the department.
>
> (2) The inmate's counsel of record or other attorney requested by the inmate.
>
> (3) A spiritual adviser selected by the inmate or the members of the immediate family of the inmate.

61 Pa.C.S. § 4303 (emphasis added).

Lopez asserts that he has a protected liberty interest in not being housed in solitary confinement and under the conditions present in SCI–Greene's capital case unit. In making this argument, Lopez relies on *Sandin* and *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). In *Sandin*, an inmate serving an indeterminate thirty-year sentence at a prison in Hawaii was sentenced to thirty days of disciplinary segregation as a result of an altercation with prison officials. Upon the filing of a complaint for declaratory and injunctive relief for a deprivation of due process at his disciplinary hearing, the district court granted summary judgment in favor of the prison officials. The Court of Appeals reversed, concluding that a liberty interest existed in remaining free from disciplinary segregation.

On appeal, the United States Supreme Court renounced the involvement of the courts in the daily operations of prisons and declared that the courts must return to the due process principles established in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Accordingly, the Supreme Court held:

> Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* 515 U.S. at 483–84, 115 S.Ct. 2293. The Supreme Court further held that disciplinary segregation was not an atypical and significant hardship in relation to ordinary incidents of prison life, because such discipline mirrored conditions found for inmates in administrative segregation and protective custody. The Supreme Court determined that the prison regulation did not create a protected liberty interest, and, thus, reversed the Court of Appeals.

The Supreme Court expounded on its *Sandin* decision in *Wilkinson,* where a group of former and current inmates housed at Ohio's highest security facility (Supermax Facility) brought a class action lawsuit against prison officials seeking declaratory and injunctive relief asserting that the placement in the Supermax Facility violated their Fourteenth Amendment due process rights. The district court determined that the inmates had a protected liberty interest in avoiding placement in the Supermax Facility and that the inmates had been denied due process because they were not afforded notice and an adequate hearing. The Court of Appeals affirmed.

The Supreme Court granted *certiorari* to determine what due process must be afforded prior to an individual's placement in the Supermax Facility. In accordance with *Sandin,* the Supreme Court stated in *Wilkinson* that, to prevail on their claims, the inmates first had to demonstrate that assignment to the Supermax Facility imposed an atypical and significant hardship on them in relation to the ordinary incidents of prison life. The Supreme Court noted that after *Sandin,* the Courts of Appeals had not established a baseline from which to determine what constitutes an atypical and significant hardship. Under the specific factual circumstances found in *Wilkinson,* the Supreme Court determined that assignment to the Supermax Facility imposed an atypical and significant hardship under any baseline.[3]

---

**3.** The Supreme Court described the Supermax Facility conditions as follows:

> Conditions at [the Supermax Facility] are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement.... In [the Supermax Facility] almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23

hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.

Incarceration at [the Supermax Facility] is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, [the Supermax Facili-

In determining that assignment to the Supermax Facility constituted a protected liberty interest, the Supreme Court cited three factors: (1) the extreme conditions imposed on Supermax Facility inmates depriving them of almost all human contact and environmental and sensory stimuli; (2) the indefinite duration of confinement in the Supermax Facility; and (3) disqualification for parole consideration. The Court observed that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Wilkinson,* 545 U.S. at 224, 125 S.Ct. 2384.

In discussing the extreme conditions at the Supermax Facility, the Supreme Court in *Wilkinson* noted that "[c]onditions at [the Supermax Facility] are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units." *Id.* at 214, 125 S.Ct. 2384. The Supreme Court stated that "[i]t is fair to say [Supermax Facility] inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact." *Id.*

Having determined that the inmates established a protected liberty interest, the Supreme Court turned to the question of what due process was owed to the inmates. The Supreme Court noted that the inmates' interest must be evaluated in light of the curtailment of liberties for prisoners. The Supreme Court also noted that Ohio's prison policy afforded inmates notice; an opportunity for rebuttal; an opportunity to submit objections prior to final review, which decreased the possibility of erroneous placement of an inmate; and required any decision maker to provide a short statement of reasons for placement of an inmate in the Supermax Facility so as to provide a basis for review. The Supreme Court stated that Ohio had a strong interest in ensuring the safety of guards, prison personnel, the public, and the prisoners. In light of Ohio's interests and the fact that the inmates were given notice and an opportunity to be heard, the Supreme Court held that Ohio's procedures adequately safeguarded the inmates' liberty interests.

In order for a protected liberty interest to exist in this case, Lopez must assert that his housing in SCI-Greene's capital case unit constitutes an atypical and significant hardship on him in relation to the ordinary incidents of prison life. In *Clark,* this Court set forth the principles in *Sandin* and *Wilkinson.* The inmates in *Clark* had their death sentences vacated or overturned but DOC nevertheless continued to house the inmates in the capital case unit. The inmates filed a complaint in the nature of mandamus in this Court's original jurisdiction, seeking money damages and a writ of mandamus directing their immediate release into the general population. Because the inmates sought compensatory damages, we determined that we did not have original jurisdiction and transferred the matter to the trial court.

In their complaint, the inmates alleged the following:

> ty] cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area.
>
> Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say [the Supermax Facility] inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.
>
> *Wilkinson,* 545 U.S. at 214, 125 S.Ct. 2384 (emphasis added).

[The inmates] averred that prisoners assigned to the [c]apital [c]ase [u]nit are held in solitary confinement; have limited hours of non-contact visitation; are given ten hours of exercise per week in a small cage; are allowed no indoor exercise; can make only three fifteen-minute phone calls per week; and most have no opportunities to work or to participate in educational or rehabilitative programming.... [The inmates] also averred that they suffer from poor health due to long-term confinement in small cells, lack of normal mobility and lack of sunshine.

*Clark*, 918 A.2d at 158. Sustaining DOC's preliminary objection in the nature of a demurrer for failure to state a claim, the trial court determined that the inmates had "no clear legal right to be housed outside of the [c]apital [c]ase [u]nit, and, concomitantly, that [DOC] ha[d] no corresponding duty to assign them to any particular area of the prison." *Id.*

On appeal to this Court, the inmates asserted that they had a clear legal right to be removed from the capital case unit because their death sentences had been vacated and that DOC had a corresponding duty to place them in the general population. We first noted that "it is entirely a matter of [DOC's] discretion where to house an inmate." *Id.* at 160. We next observed that section 3 of Act 80 [4] compels DOC to remove inmates from the general population whenever the governor signs the execution warrant. We concluded that, under section 3 of Act 80, mandamus would only lie to compel an inmate to be moved to the capital case unit. Thus, we held that the trial court properly sustained the preliminary objection insofar as it related to mandamus relief, because "mandamus will not lie to compel a defendant to do that which is invalid under statute." *Id.* at 161.

We further determined that the inmates had failed to demonstrate a protected liberty interest in being housed in the general population, and, absent such a showing, DOC had no corresponding duty to remove the inmates from the capital case unit. Citing *Sandin*, we stated that the inmates did not describe a baseline, *i.e.*, prison conditions within the general population or within other types of segregated housing, against which to measure the living conditions afforded to the inmates housed in the capital case unit. We held that the inmates did not establish how their situation imposed an atypical and significant hardship on them in relation to the ordinary incidents of prison life.

Applying the considerations identified in *Wilkinson* for determining whether a protected liberty interest existed, we concluded in *Clark* that: (1) indefinite duration does not by itself constitute a protected liberty interest; (2) the inmates failed to complain of more onerous conditions in the capital case unit than those conditions found in other segregated units; and (3) as the inmates acknowledged, they were ineligible for parole as they would likely be serving life sentences. Thus, we held that the inmates failed to state a liberty interest claim, and the trial court properly dismissed their claims.

Pursuant to *Clark*, the fact that Lopez is being housed for an indefinite duration in the capital case unit cannot, alone, constitute a protected liberty interest. In regard to the alleged extreme conditions for capital case prisoners held in solitary confinement, the Legislature has provided

---

**4.** Act of June 18, 1998, P.L. 622, No. 80, 61 P.S. § 3003, repealed by the Act of August 11, 2009, P.L. 147. The subject matter of section 3 of Act 80 is now codified as section 4303 of the Prisons and Parole Code, 61 Pa.C.S. § 4303.

that the solitary confinement is part of Lopez's prison sentence. 61 Pa.C.S. § 4303. Lopez's argument is that inmates housed in the capital case unit do not receive the same privileges as inmates housed in the general population. Lopez avers that capital case prisoners receive no human contact, live under constant illumination, are kept in a 7x10–foot cell, receive two hours of outside recreational activity five days a week in an 8x18–foot cage, are permitted to have three eight- to ten-minute showers per week in a 3x3–foot cage, and receive time, if available, in the law library every seven to ten days in a 4x4–foot cage. (Petition at ¶ 42.)

However, Lopez does not provide a comparison with the general population outside of the fact that the general population is not restricted to solitary confinement and a brief mention in the relief sought section of the Petition that capital case prisoners be given two extra hours of "inside the unit recreation, as all those in the general population but in our own capital case units." (Petition at ¶ E.) Thus, Lopez has failed to establish that the conditions in the capital case unit are so onerous as to be an atypical and significant hardship on him in relation to the ordinary incidents of prison life.

The remaining factor of whether being housed in the capital case unit disqualifies inmates from parole consideration is inapplicable to Lopez's situation, as capital case prisoners are not eligible for parole. Section 6137(a)(1) of the Prisons and Parole Code, 61 Pa.C.S. § 6137(a)(1).[5] Having applied the considerations set forth in *Wilkinson* and *Clark,* and the Supreme

Court's decision in *Sandin,* to Lopez's situation, we conclude that he has failed to establish that he has a protected liberty interest in avoiding being housed in the capital case unit.

Moreover, because the Legislature has specifically provided that a capital case prisoner shall be kept in solitary confinement until the execution of the death penalty or the inmate's lawful discharge from custody pursuant to section 4303 of the Prisons and Parole Code, DOC is required to keep Lopez in solitary confinement. DOC's own prison regulation states that "an inmate does not have a right to be housed in a particular facility or in a particular area within a facility," 37 Pa.Code § 37.11, and it is within DOC's, and its prison officials', discretion to determine where inmates are housed. *McKune; Dial.* DOC has chosen to house all capital case prisoners in the capital case unit. Mandamus will not lie to compel DOC to engage in conduct in violation of a statute or to direct it to exercise its discretion in a particular manner. *Buehl; Clark.* Accordingly, Lopez had no expectation of being housed in any other manner than under solitary confinement. *Sandin.*

Even if Lopez had established a protected liberty interest, he has not asserted how his due process rights have been violated. As we noted in *Clark:*

> *Wilkinson* is ... distinguishable from the instant case because the constitutional due process inquiry in *Wilkinson* focused on Ohio's procedures for assigning or transferring inmates to the [S]upermax [F]acility. Here, assuming *arguendo* that [the inmates]

---

**5.** Section 6137(a)(1) of the Prisons and Parole Code states:

The board may parole subject to consideration of guidelines established under 42 Pa. C.S. § 2154.5 (relating to adoption of guidelines for parole) and may release on

parole any inmate to whom the power to parole is granted to the board by this chapter, *except an inmate condemned to death* or serving life imprisonment. . . .

*Id.* (emphasis added).

had asserted a protected liberty interest, their complaint does not indicate how they were deprived of due process of law. [The inmates] were all sentenced to death, presumably after a trial by jury, and an execution warrant was signed for each of them. At that point, as discussed previously in this opinion, [DOC] had no discretion over where to house them. By statute it had to place them in the [c]apital [c]ase [u]nit.... [The inmates] have failed to aver how due process was lacking.

*Clark*, 918 A.2d at 164. This case is also distinguishable from *Wilkinson* in the same manner.

Further, the inmates in *Clark* were in a much worse situation than Lopez, as their death sentences had been vacated but they remained in solitary confinement. Section 4303 of the Prisons and Parole Code compelled DOC to place Lopez in solitary confinement upon the signing of his execution warrant. DOC was following the statute when placing Lopez in solitary confinement in the capital case unit. We note that Lopez does not necessarily assert that he was deprived of any due process or that he has a protected liberty interest in not being housed in the capital case unit, only that he has a protected liberty interest in not being housed in his current conditions. Unlike the inmates in *Clark*, Lopez's death sentence has not been overturned or vacated. Lopez's protected liberty interest arguments concerning the prison's conditions are more relevant to his Eighth Amendment cruel and unusual punishment claim, which is discussed below.

Thus, we sustain DOC's preliminary objection as to Lopez's Fourteenth Amendment due process claim, because Lopez has failed to demonstrate that he has a protected liberty interest in where he is housed and mandamus will not be issued to compel DOC, or its prison officials, to act contrary to statutory law or force them to exercise their discretion in a way that the courts deem more appropriate.

## B. Cruel and Unusual Punishment

■■■ In the Petition, Lopez also asserts that the conditions of the capital case unit violate his Eighth Amendment protection against cruel and unusual punishment because of the twenty-four-hour cell lighting that causes Lopez to suffer from sleep deprivation. Specifically, Lopez avers that the capital case prisoners are suffering from "eye deterioration," "normal sleep," and "death row syndrome, [which] further cause (A) anti-social behavior, (B) severe sleep deprivation and disorders, (C) severe mental and physical depression, (D) suicidal tendencies, (E) constant and severe insomnia, (F) schizophrenia, (G) constant impulse control disorders, (H) unsociable disorders and behaviors, [and] (I) personality disorders." [6] (Petition at ¶¶ 11, 13.) Lopez further contends that his solitary confinement also constitutes cruel and unusual punishment.

■■■ "[D]eficiencies and inadequacies in prison conditions do not necessarily violate the Eighth Amendment. The amendment is violated only where an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Tillery v.*

---

6. DOC argues that Lopez has failed to allege that he personally suffers from any of these physical ailments or psychological disorders. However, we note that this Court is generally inclined to construe *pro se* filings liberally. *Means v. Housing Authority of the City of Pittsburgh*, 747 A.2d 1286, 1289 (Pa.Cmwlth.

2000). Moreover, Lopez more specifically avers in his brief that he suffers from "depression, anxiety attacks, high blood pressure, eye-sight [sic] deterioration, dissociative fugue disordered [sic], sleep disorders and the other psychological issues." (Lopez's brief at 8–9.)

*Owens,* 907 F.2d 418, 426 (3d Cir.1990) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). A violation requires proof that the "deprivation suffered was sufficiently serious, and that a prison official acted with deliberate indifference in subjecting him to that deprivation." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d Cir.1997). Courts should not use a static test in determining whether confinement conditions are cruel and unusual punishment, because the "Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes,* 452 U.S. at 346, 101 S.Ct. 2392. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. 2392. However, "the prison environment itself may not be so brutal or unhealthy as to be in itself a punishment." *Tillery,* 907 F.2d at 426.

With regard to Lopez's claim that his solitary confinement violates his Eighth Amendment protection against cruel and unusual punishment, this Court has recognized that "[s]olitary confinement alone does not violate the Eighth Amendment prohibition against cruel and unusual punishment." *Wareham v. Jeffes,* 129 Pa. Cmwlth. 124, 564 A.2d 1314, 1323 (1989); *see also Peterkin v. Jeffes,* 855 F.2d 1021, 1023–33 (3d Cir.1988) (determining that, under the *totality of the circumstances,* the capital case prisoners' solitary confinement for twenty-two hours per day did not constitute cruel and unusual punishment where the prisoners had access to acceptable cell sizes of seventy-one square feet and sixty square feet; sanitary cell conditions; access to medical personnel and educational materials; and access to two

hours per day of exercise with one other inmate in exercise spaces of 9x20 feet, 20x50 feet, and 75x100 feet). Thus, Lopez's solitary confinement claim alone is not enough for Lopez to state a cognizable claim for violation of the Eighth Amendment.

However, Lopez also asserts that the fact that SCI–Greene has twenty-four-hour cell lighting in the capital case unit is enough to state a plausible claim for cruel and unusual punishment. This Court's decision in *Harris v. Horn,* 747 A.2d 1251 (Pa.Cmwlth.2000), is directly on point. In *Harris,* an inmate filed a petition for review in our original jurisdiction alleging that twenty-four-hour cell lighting constituted cruel and unusual punishment, because he developed eye problems, sleep disorders, headaches, and mental problems due to a lack of sleep. DOC filed a preliminary objection stating that the inmate failed to state a cause of action. In ruling on DOC's preliminary objection, we noted that the inmate alleged more than just disruptive sleep but actual medical problems.

We observed that the Court of Appeals in *Keenan v. Hall,* 83 F.3d 1083 (9th Cir. 1996), *amended on denial of reh'g,* 135 F.3d 1318 (9th Cir.1998), denied summary judgment to prison officials on an inmate's Eighth Amendment claim, alleging that constant cell lighting resulted in sleep disorders and other psychological problems for the inmate. We noted the court's statement in *Keenan* that "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." *Id.* at 1090–91 (quoting *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or. 1990), *vacated on other grounds,* 12 F.3d 1444, 1458–59 (9th Cir.1993)). Accordingly, because the inmate alleged that he

suffered actual physical and mental harm beyond mere disruption of sleep from the twenty-four-hour cell lighting, we determined that the inmate stated a cause of action. Thus, we overruled DOC's preliminary objection.

Likewise, Lopez has asserted that, due to the constant illumination in the capital case unit, he suffers from sleep deprivation, physical ailments, and psychological disorders. Contrary to DOC's contention, Lopez has not merely alleged speculative allegations regarding his health, but has alleged actual physical and psychological harm other than mere disruptive sleep, *i.e.*, eyesight deterioration, sleep disorders, depression, and anxiety attacks. At the preliminary objection stage, we must accept all well-pleaded allegations as true, *Saxberg*, and, thus, we conclude that Lopez has stated a claim for a violation of his Eighth Amendment protection against cruel and unusual punishment. Accordingly, DOC's preliminary objection for failure to state a claim is overruled.[7]

### III. Conclusion

Because Lopez has not demonstrated a protected liberty interest in where he is housed, we sustain DOC's preliminary objection with respect to Lopez's failure to state a claim that his Fourteenth Amendment due process rights have been violated. Because Lopez has alleged actual physical and psychological harm as a result of constant cell lighting, we overrule DOC's preliminary objection relating to cruel and unusual punishment.

### *ORDER*

AND NOW, this 26th day of June, 2015, the preliminary objections filed by the

Pennsylvania Department of Corrections on behalf of John Wetzel, Secretary of Corrections; Tom Corbett, former Governor of Pennsylvania; and Louis S. Folino, former Superintendent at the State Correctional Institution at Greene County (together, Respondents) are sustained in part and overruled in part in accordance with the attached opinion. Respondents shall file an answer within thirty days of the date of this order.

---

7. We note that Lopez also asserts that he has been denied equal protection of the law under the Fourteenth Amendment, because: (1) capital case prisoners do not receive the same recreation time as the general population; and (2) not all capital case prisoners are permitted to participate in a work program contrary to DOC's policies. However, DOC has not filed preliminary objections with respect to these claims.